**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Terry L. HENDERSON, Defendant–
Appellant.**

**No. 94–10449.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1995.

Decided Oct. 12, 1995.

Edward W. Swanson, Assistant Federal Public Defender, San Francisco, California, for defendant-appellant.

Eduardo G. Roy, Assistant United States Attorney, San Francisco, California, for plaintiff-appellee.

Before: BEEZER and THOMPSON, Circuit Judges, and EZRA, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

Terry L. Henderson appeals his convictions for bank robbery. He contends the district court abused its discretion under Federal Rules of Evidence 701 and 403 by allowing a police officer to testify that Henderson was the person shown robbing two banks in surveillance photographs taken during the robberies. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Terry L. Henderson was charged with three counts of unarmed bank robbery in violation of 18 U.S.C. § 2113(a). The first count charged Henderson with robbing California Savings and Loan, the second with robbing Bank of America, and the third with robbing Bank of the West. Henderson was found guilty of the first and third counts, and acquitted of the second.

The issue in the two counts of conviction pertains to Henderson's identification as the bank robber. With regard to the first count, the government called one eyewitness, a bank teller, who testified she did not have a good look at the robber's face, and was unable to identify Henderson as the robber. With regard to the third count, the government called two eyewitnesses to the robbery. Both identified Henderson as the robber.

To buttress its case on both counts, the government introduced into evidence a number of bank surveillance photographs taken during the robberies. Seventeen photographs taken during the robbery charged in count 1 depicted the robber wearing a hooded sweatshirt, a baseball-type cap, and a heavy overcoat. Six photographs taken during the robbery charged in count 3 depicted the robber wearing a bulky overcoat.

The government called Police Officer Robert McMillan as a witness. Over Henderson's objection, McMillan testified he worked for the San Francisco Police Department in the Robbery Division, had known Henderson for approximately fifteen years and had seen him daily, weekly, or biweekly throughout that fifteen-year period. He also testified he had seen Henderson in a heavy coat, although he could not recall ever seeing Henderson in a baseball-type cap or a hooded sweatshirt. McMillan said he was familiar with Henderson's appearance, and, testifying as a lay witness, he identified Henderson as the person shown robbing the banks in the surveillance photographs.[1]

---

* Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

1. With regard to the second count, two eyewitnesses to the robbery testified. One of them selected Henderson from a photo lineup and identified him in court as the robber. McMillan did not testify in reference to this count.

Following McMillan's testimony, the district court instructed the jury to consider his testimony as opinion evidence. During deliberations, one of the jurors submitted a note to the court inquiring about the context in which McMillan saw Henderson so regularly. The note read:

> We need to know in what context is Robert McMillan seeing Terry Henderson almost on a daily basis. Driving by quickly? Stopping and talking to him as he hangs out on the corner, as he hangs out at a bar, at the boys club? When he arrests him? How does he see him so much and why?

In response to this note, the court instructed the jury:

> The question raises a matter which I think it useful to clarify because evidently there is some unclearness as a result of my comments yesterday.

> You should not speculate as to the reasons why McMillan became familiar with the defendant. That is not relevant to the issues that you are being asked to consider.

> The reason that McMillan was permitted to testify was because over a long period of time he had become familiar with the appearance of the defendant, had been exposed to him and was therefore in a position to offer an opinion about whether a person depicted in a photograph was or was not Terry Henderson.

> There are a variety of circumstances under which Officer McMillan saw the defendant and none of those is relevant to your issue or the issues which are being presented to you.

> The sole purpose of McMillan's testimony was for the purpose of giving you an opinion with respect to whether or not the person depicted in the photograph is Terry Henderson, and that's all there was to his testimony and that's the only relevance it is for the present case. Is that clear?

> So there's just no reason for you to speculate at all as to why it was that McMillan became familiar with the defendant and [you] should not draw any adverse inference from the fact McMillan is a police officer. Just no reason to go into all the details as to why it was that McMillan was familiar.

. . . . .

> [A]ll of the circumstances under which McMillan may have seen Henderson simply [are] not relevant to the issues which you have to confront. You're being asked to consider three specific charges and the key issue in the case as you well know is the identity question, whether or not the individual who committed the robberies was the defendant. And your decision is going to turn on the answer to that question.

> And it is in that sense that McMillan's opinion, and it is an opinion it's not an eyewitness statement by any means, it is in that connection that his opinion may or may not assist you in your decision making.

> Opinion testimony is sometimes offered where it is thought that it may assist the jury. If it does assist you, fine. If it does not assist you, then you need not give it any weight at all.

The jury acquitted Henderson on the second count and found him guilty on the first and third counts, the two counts for which McMillan had identified Henderson as the robber in the surveillance photographs. This appeal followed.

## DISCUSSION

■ Henderson contends McMillan's testimony was improperly admitted under Federal Rules of Evidence 701 and 403. We review the admission of lay opinion testimony under these rules for abuse of discretion. *United States v. Langford,* 802 F.2d 1176, 1179 (9th Cir.1986), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987); *United States v. Butcher,* 557 F.2d 666, 670 (9th Cir.1977).

### 1. Lay Opinion Identification

Federal Rule of Evidence 701 provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on

the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Henderson argues Federal Rule of Evidence 701 has been interpreted by this circuit to require exclusion unless two features are simultaneously present. One, the lay witness must have had substantial contact with the defendant; two, the lay witness must have knowledge of relevant information concerning the defendant's appearance that the jury could not see by observing the defendant in court. Although Henderson concedes McMillan had substantial contact with him, he argues McMillan should not have been allowed to testify because McMillan had no information unavailable to the jury concerning Henderson's appearance. We reject this argument.

■ We do not require a showing of both sustained contact and special knowledge as prerequisites to a lay witness giving identification testimony. Instead of any particular amount of sustained contact, we require a lay witness to have sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful. *See, e.g., Langford,* 802 F.2d at 1179 (two witnesses, one "had met with [the defendant] approximately 50 times and [the other] had known [the defendant] most of his life"); *Butcher,* 557 F.2d at 667 n. 3 (several witnesses who had observed the defendant on multiple occasions or had total exposure to him for at least two hours); *United States v. Miranda,* 986 F.2d 1283, 1285 (9th Cir.) (two longtime acquaintances of defendant), *cert. denied,* —— U.S. ——, 113 S.Ct. 2393, 124 L.Ed.2d 295 (1993); *United States v. Young Buffalo,* 591 F.2d 506, 513 (9th Cir.) (defendant's estranged wife and his probation officer), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979); *United States v. Saniti,* 604 F.2d 603, 605 (9th Cir.) (defendant's two roommates), *cert. denied,* 444 U.S. 969, 100 S.Ct. 461, 62 L.Ed.2d 384 (1979). *See also United States v. LaPierre,* 998 F.2d 1460, 1465 (9th Cir.1983) (lay opinion identification inadmissible where witness "not only did not know [the defendant, but] he had never even seen him in person" and identification based solely on the witness' review of photographs of defendant).

■ We have never held that a lay opinion witness must also have specialized knowledge of the defendant's appearance unavailable to the jury. Indeed, we have upheld admission of lay opinion identifications even when a defendant's appearance at trial was closer to his appearance in surveillance photographs than to his appearance at the time the identifying witnesses had contact with him. *See Butcher,* 557 F.2d at 669. While lay witness identifications are particularly valuable when the witness has specialized knowledge of the defendant's appearance unavailable to the jury, *see Langford,* 802 F.2d at 1179, such knowledge is not a prerequisite to the admission of the testimony.

■ In any event, as the government points out, McMillan was familiar with Henderson's appearance in at least one way that would have eluded the jury. The robber in each of the surveillance photographs was wearing a heavy overcoat and McMillan testified he had seen Henderson previously in a heavy overcoat. Because the jury was unable to see Henderson in such a garment, which might well affect the appearance of his weight and bulk, McMillan's experience in this regard amounted to specialized knowledge. *See United States v. Towns,* 913 F.2d 434, 445 (7th Cir.1990) (upholding lay witness identification in part because the bulky sweatshirt worn by robber "potentially made him appear heavier than he really was").

■ Nevertheless, Henderson contends that because McMillan never saw him wearing a hat or a hooded sweatshirt similar to those worn by the robber in the photographs of the bank robbery charged in count 1, McMillan lacked sufficient special knowledge to enable him to identify Henderson as the robber. We disagree. Whether a lay opinion witness has seen the defendant in each of the articles of clothing worn by a person shown in a photograph goes to the weight, not the admissibility, of that witness' testimony. *Cf. United States v. Eubanks,* 591 F.2d 513, 518 (9th Cir.1979) (per curiam).

Based on his substantial knowledge of Henderson's appearance, McMillan was

"more likely to identify correctly [Henderson] than [wa]s the jury." *LaPierre,* 998 F.2d at 1465. In addition, due to McMillan's consistent and long-term exposure to Henderson, McMillan "had far more opportunity than the jury to perceive [Henderson] from a variety of angles and distances and under different lighting conditions. Unlike the jury [McMillan was] familiar with [Henderson's] carriage and posture." *United States v. Jackman,* 48 F.3d 1, 5–6 (1st Cir.1995).

We hold the district court did not abuse its discretion in finding McMillan's testimony admissible under Federal Rule of Evidence 701.

2. Probative Value Versus Prejudicial Effect of Police Officer's Lay Opinion Identification

Whether McMillan's testimony is admissible under Federal Rule of Evidence 701 does not end the inquiry. The evidence must also pass the probative value test of Federal Rule of Evidence 403. This rule provides that relevant evidence will be excluded if its probative value is substantially outweighed by its prejudicial effect.[2] Henderson argues the danger of unfair prejudice from McMillan's testimony substantially outweighed its probative value. He contends this prejudice was exacerbated because McMillan identified himself during his testimony as a police officer assigned to a robbery unit.

We have previously recognized the danger of unfair prejudice that arises from lay opinion identifications offered by police officers. As we said in *Butcher,* 557 F.2d at 669, an identification by an acknowledged police officer "increase[s] the possibility of prejudice to the defendant in that [the defendant is] presented as a person subject to a certain degree of police scrutiny." However, we have stopped short of declaring the admission of lay identifications by police officers to be an abuse of discretion per se. *See id.* We decline to do so now.

At first glance, our cases on police officer lay identifications seem to lead to an anomalous result. On the one hand, we have stated that such identifications are disfavored and should be used only if no other adequate identification testimony is available to the prosecution. *LaPierre,* 998 F.2d at 1465. On the other hand, we have upheld convictions of defendants where lay identifications by police officers have been accompanied by other identifying evidence, holding that, despite the prejudicial effect of such testimony, any error in admitting the testimony was harmless. *See Butcher,* 557 F.2d at 670. Taking this approach, we have affirmed the convictions of defendants when no identification testimony other than the officer's was available as well as when other identification testimony was presented.

The results in these cases can be harmonized by considering the interrelationship of lay identifications by police officers, other identification evidence, and the probative value requirement of Federal Rule of Evidence 403.

Whenever a police officer offers lay opinion identification of a defendant, there is a significant degree of prejudice. When there is also testimony from other witnesses identifying the defendant, the probative value of the officer's opinion is slight. Because the prejudicial effect substantially outweighs the probative value, admission of the officer's opinion testimony violates Rule 403. The very fact, however, that there is other reliable identification testimony linking the defendant to the crime may render the error harmless.

■ On the other hand, if the only identification evidence is the officer's lay opinion testimony, the probative value of this testimony is significantly increased—simply by reason of its uniqueness. In this circumstance, a district court will not abuse its discretion if it determines the probative value of the evidence outweighs its prejudicial effect.

2. Federal Rule of Evidence 403 provides:
  Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ Applying this analysis to the two counts of robbery for which Henderson was convicted, we refuse to overturn either conviction. On the first count, there was no other identification testimony identifying Henderson as the robber depicted in the surveillance photographs, or otherwise identifying him as the bank robber. As a result, McMillan's identification of Henderson as the robber depicted in the surveillance photographs was highly probative. Because the prejudicial effect of this testimony did not substantially outweigh its probative value, its admission into evidence did not violate Federal Rule of Evidence 403.

■ On the third count, however, there were two eyewitnesses who identified Henderson as the robber. In this circumstance, the prejudicial effect of McMillan's opinion testimony substantially outweighed its probative value. Admitting McMillan's testimony violated Federal Rule of Evidence 403. This error was harmless, however, because there was other reliable identification testimony identifying Henderson as the robber.

Finally, the district court's instruction to the jury mitigated any prejudice occasioned by the admission of McMillan's testimony. In this instruction, the court told the jury McMillan's identification of Henderson as the person shown robbing the banks was simply an opinion and if it did "not assist you, then you need not give it any weight at all." The court also instructed the jury that it "should not draw any adverse inference from the fact McMillan is a police officer."

AFFIRMED.