**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000609**
**29-APR-2022**
**09:06 AM**
**Dkt. 76 MO**

NO. CAAP-19-0000609

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
BRADLEY GABRIEL, Defendant-Appellant, and
CHYNNA ROBELLO-PASSI and JAMES MALGANA, Defendants-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1CPC-18-0001881)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Bradley Gabriel (**Gabriel**) appeals from the July 30, 2019 "Judgment of Conviction and Sentence; Notice of Entry" (**Judgment of Conviction and Sentence**) entered by the Circuit Court of the First Circuit (**Circuit Court**).[1] A jury found Gabriel guilty of one count of Burglary in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) § 708-810(1)(c)(2014).[2] Gabriel was sentenced to ten years

---

[1] The Honorable Todd W. Eddins presided.

[2] HRS § 708-810 reads in relevant part:

> **Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:

(continued...)

incarceration, to run concurrent with any other sentence currently being served.

The complaining witness's home surveillance camera captured two videos of the burglary, which occurred on November 27, 2018.  The key issue at trial was the identity of the burglars.  Two police officers, whose testimony was admitted as lay witness opinion testimony under Hawaii Rules of Evidence (**HRE**) Rule 701, identified Gabriel as one of the individuals in one of the surveillance videos and a still frame photograph taken from that video.

On appeal, Gabriel raises the following points of error: (1) the trial court erred in allowing Honolulu Police Department (**HPD**) officer Garret Maekawa (**Officer Maekawa**) and officer Darren Soto (**Officer Soto**) to testify as to the identity of Gabriel in a surveillance video and a photograph taken from the video; (2) the trial court erred and abused its discretion in its HRE Rule 403 analysis in allowing the police officers' identification testimony; and (3) the trial court erred in failing to give an eyewitness identification instruction to the jury.

Given the evidence of the police officers' prior interactions with Gabriel and the Circuit Court's limiting instructions to the jury, the Circuit Court did not err in admitting Officer Soto's and Officer Maekawa's lay opinion testimony as to the identity of Gabriel through the surveillance video and photograph.  We therefore affirm.

### I.  Background

Plaintiff-Appellee State of Hawaiʻi (**State**) charged Gabriel by felony information with Burglary in the First Degree, alleging that "[o]n or about November 27, 2018, . . . [Gabriel

_____

(...continued)

    ....

       (c)   The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

and co-Defendants] Chynna Robello-Passi [(**Robello-Passi**)]. . . and James Malgana [(**Malgana**)] did intentionally enter unlawfully . . . the residence of Jason Hirata . . . with intent to commit therein a crime against a person or property rights . . . in violation of Section 708-810(1)(c) of the Hawaii Revised Statutes."[3]

On May 20, 2019, Gabriel filed a motion in limine to exclude, among other things, "lay testimony by any police officer attempting to identify [Gabriel] and based on video or photographs in this case" because "[s]uch identification evidence is unfairly prejudicial and invades the province of the jury to make factual determinations based on observation of evidence." Gabriel asserts the record does not support why the police officers' identification would be more correct than the jury's when the police officers' familiarity with Gabriel is based only on encounters with Gabriel in the past.  The jury can determine from the evidence the identification of the burglar; thus, the police officers' identification testimony lacks probative value.

On the same day, the State filed a motion in limine and requested, *inter alia*, the trial court to allow identification testimony by Officer Maekawa and Officer Soto pursuant to HRE Rule 701, or require a hearing on admission of such testimony prior to trial.

At the motions in limine hearing on May 28, 2019, the Circuit Court indicated it would hold an HRE Rule 104[4] hearing (**Rule 104 Hearing**) before trial on the issue of identification of Gabriel.  On May 29, 2019, after the Rule 104 Hearing and argument, the Circuit Court concluded that the identification testimony of Officer Soto and Officer Maekawa identifying Gabriel

---

[3] Although Gabriel, Robello-Passi, and Malgana were charged together, Robello-Passi entered a no contest plea to the charge and Malgana failed to appear for trial.  Trial proceeded only as to Gabriel.  Robello-Passi and Malgana are not parties to this appeal.

[4] HRE Rule 104 permits the trial court to determine "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence[.]"

as one of the burglars in a surveillance video and photograph was admissible.  The Circuit Court also concluded, after an HRE Rule 403 balancing analysis, that the probative value of the police officers' testimony was not substantially outweighed by the danger of prejudice.  The Circuit Court advised it would issue a limiting instruction that "the jury can't draw any adverse inferences from the contacts with the law enforcement."

Furthermore, in settling jury instructions, the parties agreed that the Circuit Court would issue a limiting instruction as to the identification testimony and an instruction pertaining to the credibility of witnesses.

On May 29, 2019, the jury found Gabriel guilty of Burglary in the First Degree.  On July 30, 2019, the Circuit Court entered the Judgment of Conviction and Sentence.

## II.  Discussion

A.  **The Circuit Court did not err in allowing Officer Maekawa and Officer Soto to give lay opinion testimony identifying Gabriel in a surveillance video and photograph.**

In his first point of error, Gabriel contends the trial court erred in allowing Officer Soto and Officer Maekawa to offer lay opinions identifying Gabriel as the individual in a surveillance video and photograph when the "high-def" surveillance video contained an obscured, but not grainy, depiction of the person therein.  Gabriel argues that because the surveillance video was "not of poor quality[,]" the Circuit Court's admission of the police officers' lay testimony identifying him infringed upon the province of the jury, as the trier of fact, to determine for itself the identity of the individual in the surveillance video and photograph.[5]

---

[5]  The State published seven exhibits to the jury including: Exhibits 5 and 6, surveillance video clips of what Hirata identified as his living room with each showing two individuals rummaging through items; and Exhibit 18, a still frame captured from the Exhibit 5 surveillance video, which the officers reviewed to identify Robello-Passi and Gabriel in what Hirata identified as his living room.

4

In turn, the State argues that HRE Rule 701, regarding lay witness testimony, is materially identical to its federal counterpart and that Hawaiʻi courts should look to federal case law in construing this Hawaiʻi rule.  The State contends federal courts have interpreted Federal Rules of Evidence (**FRE**) Rule 701 as permitting lay opinion identification testimony from police officers so long as certain factors are met, and that the relevant factors were met in this case such that the Circuit Court properly allowed the police officers to identify Gabriel from the surveillance video and photograph evidence.

In reviewing the Circuit Court's admission of the police officers' identification testimony, we consider the following:

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue.  When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.  However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

Ching v. Dung, 148 Hawaiʻi 416, 427, 477 P.3d 856, 867 (2020) (quoting  State v. West, 95 Hawaiʻi 452, 456-57, 24 P.3d 648, 652-53 (2001)). "A trial court's determination that evidence is 'relevant' within the meaning of HRE . . . Rule 401 (1993) is reviewed under the right/wrong standard of review."  Id. (quoting State v. St. Clair, 101 Hawaiʻi 280, 286, 67 P.3d 779, 785 (2003)).

Our analysis begins with HRE Rule 701, which provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The commentary for HRE Rule 701 states as follows:

> This rule is identical with Fed. R. Evid. 701.[6]  The rule retains the common-law requirement that lay opinion be based upon firsthand knowledge, McCormick § 10, but liberalizes the traditional doctrine of "strict necessity," which allowed such testimony only where "all the facts cannot be placed before the jury with such clearness as to enable them to draw a correct inference...."  <u>Tsuruoka v. Lukens</u>, 32 Haw. 263, 264 (1932). <u>The present rule adopts in its place the more liberal "convenience" test, McCormick § 11, allowing such testimony when it is "helpful" to the trier of fact in determining or clarifying facts in issue</u>.
>
> . . .
>
> Several considerations support substitution of the "convenience" standard for the "strict necessity" test. As the Advisory Committee's Note to Fed. R. Evid. 701 puts it: "[N]ecessity as a standard for permitting opinions and conclusions has proved too elusive and too unadaptable to particular situations for purposes of satisfactory judicial administration." The committee also cited the "practical impossibility" of distinguishing fact from opinion.
>
> The danger that such liberalization might open the door to factually unsupported, conjectural, or biased inferences is averted by the explicit requirement of firsthand knowledge, by implicit judicial discretion under the rule to exclude opinions for lack of "helpfulness," and by express judicial discretion under Rule 403 . . . to exclude because of the danger of prejudice, confusion, or misleading the jury.  The adversary system itself provides still another safeguard, allowing detailed cross-examination on the factual bases of such opinions.

(Emphasis added.)

---

[6]  HRE Rule 701 was adopted in 1980.  Since then, FRE Rule 701 was amended in 1987, 2000, and 2011.  For purposes of the issue in this case, the Hawaiʻi and Federal versions of Rule 701 are materially similar.

FRE Rule 701 now reads:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Because HRE Rule 701 is materially similar to FRE Rule 701, case law interpreting the federal rule is persuasive authority in interpreting HRE Rule 701.  See State v. Abrigo, 144 Hawaiʻi 491, 500 n.14, 445 P.3d 72, 81 n.14 (2019) ("Federal cases interpreting the [FRE] serve as 'persuasive authority in interpreting similar provisions of the [HRE].'" (second alteration in original) (citation omitted)).

Gabriel cites United States v. LaPierre, 998 F.2d 1460 (9th Cir. 1993), where the Ninth Circuit Court of Appeals (**Ninth Circuit**) held that the district court had improperly admitted identification testimony of a police officer because of the testimony's "dubious value."  998 F.2d at 1465.  The Ninth Circuit explained, however:

> [W]e have held that while lay opinion testimony of this sort is sometimes permissible, "the use of lay opinion identification by policemen or parole officers is not to be encouraged, and should be used only if no other adequate identification testimony is available to the prosecution." United States v. Butcher, 557 F.2d 666, 670 (9th Cir.1977). Our cases upholding the use of testimony of this type have been limited to two types.  The first type is those in which the witness has had substantial and sustained contact with the person in the photograph. United States v. Langford, 802 F.2d 1176, 1178-79 (9th Cir.1986) (one witness had met with defendant over 50 times and another had known him most of his life); United States v. Barrett, 703 F.2d 1076, 1085-86 (9th Cir.1983) (witness was defendant's girlfriend). The second type is those in which the defendant's appearance in the photograph is different from his appearance before the jury and the witness is familiar with the defendant as he appears in the photograph. Barrett, 703 F.2d at 1086 (defendant had a full beard and mustache at time of the robbery but was clean-shaven at trial); United States v. Saniti, 604 F.2d 603, 604-05 (9th Cir.1979) (witnesses knew defendant well and were familiar with defendant's clothing, which defendant was wearing in photo but not wearing before the jury). The common thread binding these two types of cases is that in both there is reason to believe that the witness is more likely to identify correctly the person than is the jury.

Id.  In LaPierre, the Ninth Circuit noted there was no evidence the defendant's appearance at trial was significantly different than at the time of the alleged offense.  Id.  Moreover, the police officer who testified as to the defendant's identification did not know the defendant, had never seen the defendant in person, and the officer's knowledge of the defendant's appearance

was based entirely on review of photographs and witness descriptions of the defendant.  Id.  Thus, the court concluded the police officer's level of familiarity with the defendant's appearance fell far short of the requirement of helpfulness under FRE Rule 701, and thus, whether the person in the surveillance photographs was the defendant was properly left to the jury.  Id.

As for the element of "helpfulness," the Eighth Circuit Court of Appeals, like the Ninth Circuit, noted that: "A witness's opinion concerning the identity of a person depicted in a surveillance photograph is admissible if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." United States v. Farnsworth, 729 F.2d 1158, 1160 (8th Cir. 1984); see also United States v. Allen, 787 F.2d 933, 936 (4th Cir. 1986), cert. granted, judgment vacated on other grounds by 479 U.S. 1077 (1987); United States v. Barrett, 703 F.2d 1076, 1086 (9th Cir. 1983); United States v. Borrelli, 621 F.2d 1092, 1095 (10th Cir. 1980), cert. denied, 449 U.S. 956 (1980); United States v. Brannon, 616 F.2d 413, 417 (9th Cir. 1980), cert. denied, 447 U.S. 908 (1980).  The Tenth Circuit Court of Appeals noted that "[t]he witness's prior familiarity with the defendant's appearance is the most critical factor to determine if such a basis exists." United States v. Contreras, 536 F.3d 1167, 1170 (10th Cir. 2008) (citing Allen, 787 F.2d at 935-36).

The Ninth Circuit, in United States v. Henderson, 68 F.3d 323 (9th Cir. 1995), rejected the defendant's argument that FRE Rule 701 requires the lay witness to have had "substantial [and sustained] contact with the defendant[.]"  68 F.3d at 326. Rather, the Ninth Circuit stated "[i]nstead of any particular amount of sustained contact, we require a lay witness to have sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful." Id. (emphasis added) (citations omitted).  The Seventh Circuit Court of Appeals held it was permissible to allow a witness who had only seen the defendant once prior to testifying that the defendant was the

8

robber in bank surveillance photographs. <u>United States v. Jackson</u>, 688 F.2d 1121, 1123 n.1, 1125 (7th Cir. 1982). The Ninth Circuit has held that nine contacts, before and after the incident, were "sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful." <u>United States v. Payne</u>, 165 F.3d 36, 1998 WL 788872, at *1 (9th Cir. 1998) (quoting <u>Henderson</u>, 68 F.3d at 326).

Here, in ruling that the lay witness testimony of Officer Soto and Officer Maekawa was admissible under HRE Rule 701, the Circuit Court noted its reliance on several federal and state cases that addressed the admissibility of lay witness testimony identifying defendants in surveillance videos or photographs.[7]

Based on the overwhelming authority in other jurisdictions, we conclude the applicable test is the "totality-of-the-circumstances" approach employed by the Circuit Court and adopted in other jurisdictions, which analyzes several factors, including: (1) the witness's familiarity with the defendant; (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or whether the defendant was dressed in a manner similar to the individual depicted; (3) whether the defendant disguised his appearance at the time of the offense; (4) whether the defendant had altered his appearance prior to trial; and (5) the degree of clarity of the surveillance recording and the quality and completeness of the subject's depiction in the recording. <u>People v. Thompson</u>, 49 N.E.3d 393, 403-04 (Ill. 2016), <u>as modified on denial of reh'g</u> (Mar. 28, 2016) (citations omitted). The <u>Thompson</u> court explained:

---

[7] At the HRE 104 hearing, the Circuit Court referenced various federal cases and cases from other jurisdictions, including: <u>United States v. Dixon</u>, 413 F.3d 540, 545-46 (6th Cir. 2005); <u>Henderson</u>, 68 F.3d at 326; <u>Allen</u>, 787 F.2d at 935-37; <u>Farnsworth</u>, 729 F.2d at 1160-62; <u>People v. Thompson</u>, 49 N.E.3d 393, 403-06 (Ill. 2016), <u>as modified on denial of reh'g</u> (Mar. 28, 2016); <u>People v. Leon</u>, 352 P.3d 289, 312-13 (Cal. 2015).

> The existence of one or more of these factors indicates there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.  Moreover, it has often been held that the extent of a witness's opportunity to observe the defendant goes to the weight to be given the testimony, not its admissibility.

Id. at 405 (citations and internal quotation marks omitted).  The Thompson court further recognized:

> [T]estimony by those who knew defendants over a period of time and in variety [sic] of circumstances offers to the jury a perspective it could not acquire in its limited exposure to defendants.  Human features develop in the mind's eye over time.  These witnesses had interacted with defendants in a way the jury could not, and in natural settings that gave them a greater appreciation of defendants' normal appearance.  Thus, their testimony provided the jury with the opinion of those whose exposure was not limited to three days in a sterile courtroom setting.

Id. at 404 (other citations omitted) (quoting Allen, 787 F.2d at 936).

Here, at the Rule 104 Hearing, testimony by Officer Soto and Officer Maekawa addressed the first and most critical factor — their general level of familiarity or sufficient contacts with Gabriel.  Officer Soto testified that he identified Gabriel in November 2018 from a video and a photograph provided by Detective Samuel Delovio (**Detective Delovio**).  Prior to the positive identification, Officer Soto had encountered Gabriel at a minimum of five stops, but had never arrested him, and the most recent interaction occurred within a few months before the November 2018 burglary.  Officer Soto testified that these interactions were friendly, lasted about fifteen minutes, and from about five to ten feet away.  Officer Soto testified that Gabriel, Robello-Passi, and Malgana usually hang out with each other because they are friends, but he had never stopped all of them at once.  Officer Soto testified that once he identified the individuals in the photograph in this case, he made a follow-up report, which required that he be sure of the identification.  From the ten-second surveillance video, Officer Soto testified that he was able to identify Gabriel and the co-Defendants "based

10

on their mannerisms, their facial features, and their general appearance[.]"

In addition, the Circuit Court requested that the State elicit testimony as to the identification of Robello-Passi and Malgana, as their identification would be made through Officer Soto.  Accordingly, the State elicited testimony from Officer Soto that he had over twenty interactions with Robello-Passi "at her home, game rooms, hotspots, and [Gabriel's girlfriend's] house," and had arrested Robello-Passi for a warrant.  These interactions lasted between thirty to forty-five minutes and were mostly friendly.  As for Malgana, Officer Soto testified that prior to viewing the photograph in this case he had interacted with Malgana over ten times, but made no arrests.  Each interaction lasted around twenty minutes.  Officer Soto testified that he last saw Robello-Passi and Malgana within a couple of months of the positive identification in November 2018.

Officer Maekawa testified he received the surveillance video through Detective Delovio.  Like Officer Soto, Officer Maekawa testified that he had to be sure of his identification in notifying Detective Delovio of the positive identification made through the surveillance video.  Prior to identifying the co-Defendants, Officer Maekawa had seen Robello-Passi in November 2018, and Gabriel and Malgana in October 2018.

Officer Maekawa testified that he had never encountered all three co-Defendants together but from his experience he knew they were friends.  Also based on numerous prior occasions, Officer Maekawa testified that his identification of the co-Defendants was "based off of their--their facial features and just overall appearance, their mannerisms, the way they--they moved in the--the surveillance video."  Officer Maekawa testified that he met Gabriel in 2016 at a homeless camp that Gabriel frequented, and since then they built "a bit of a rapport where we would see each other here and there on the street and just kind of say what's up to each other. . . . I wouldn't say they were all through official capacities.  Some of them were through

arrests, but it was also times that I would just see [Gabriel] and kind of say hi."

Officer Maekawa testified that he could identify Gabriel through his "mannerisms":

> Just meaning like the way they carry themselves, I guess, the way they walk, the way their arms swing, types of things like that.  That's kind of what we do for our job, is to kind of pick up on things like that.  Everyone has a kind of distinct way of walking, way of moving about, and that's what I meant by mannerisms. . . . I--I would describe it as swagger, like just the way, I guess, he kind of moves about. And not only in this--this specific incident but the way he kind of walks and--and carries himself is with a bit of confidence, I guess you could say. . . . I would describe it as confident, comfortable. . . . [L]ike I explained, from a distance, I could easily say in past encounters like, eh, that's [Gabriel] right there based off of his mannerisms.

Similarly, as for the second factor, the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or whether the defendant was dressed in a manner similar to the individual depicted, the Circuit Court was satisfied that Officer Soto and Officer Maekawa had sufficient contact with Gabriel in close temporal proximity to the November 2018 burglary.  The Rule 104 Hearing testimony supports this factor.  There was no implication and no testimony about Gabriel's attire, and likewise, no implication about whether Gabriel disguised his appearance at the time of the offense (third factor), or whether Gabriel had altered his appearance prior to trial (fourth factor).

As to the fifth factor, the degree of clarity of the surveillance recording and the quality and completeness of the subject's depiction in the recording, the Circuit Court reviewed the short surveillance video clip beforehand and concluded:

> [I]t's not necessarily grainy.  It is high-def. But what is depicted is it is hard--or I think it's more in the lines of an obscuring of the person depicted in the video, if it is indeed Mr. Gabriel, to these witnesses.  But it's <u>more obscured than, say, grainy</u>.  And that does mean, in my view, that <u>there is a helpful aspect to the testimony</u>.

(Emphases added.)  While a witness need not have specialized knowledge of a defendant's appearance that is unavailable to a jury, Henderson, 68 F.3d at 326, "such knowledge makes an identification particularly valuable." United States v. Henderson, 241 F.3d 638, 651 (9th Cir. 2000), as amended (Mar. 5, 2001) (citing Henderson, 68 F.3d at 326) (other citation omitted).

Given the testimony elicited in the Rule 104 Hearing and the Circuit Court's analysis of the totality of the circumstances pertaining to the police officers' sufficient contact and subsequent positive identification of Gabriel through a surveillance video and photograph, the Circuit Court did not err in admitting the officers' lay opinions as helpful to the jury under HRE Rule 701.

**B.    The Circuit Court did not abuse its discretion in allowing the testimony of the police officers under HRE Rule 403.**

In his second assertion of error, Gabriel challenges the Circuit Court's ruling that the police officers' identification testimony was admissible under HRE Rule 403 balancing.  Gabriel contends the Circuit Court abused its discretion because Officer Soto and Officer Maekawa "testifying as police officers who investigate crimes and identify suspects will reasonably persuade the jury to favor their testimony[,]" making their testimonies unfairly prejudicial.  We conclude the Circuit Court did not abuse its discretion in its HRE Rule 403 analysis.

"A trial court's balancing of the probative value of relevant evidence against the prejudicial effect of such evidence under HRE Rule 403 is reviewed for an abuse of discretion." State v. Pasene, 144 Hawaiʻi 339, 362, 439 P.3d 864, 887 (2019) (citing State v. Klafta, 73 Haw. 109, 115, 831 P.2d 512, 516 (1992)).

HRE Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In Henderson, the Ninth Circuit Court rejected the defendant's argument that the testimony of a detective familiar with him should have been excluded under FRE Rule 403,[8] noting:

> Although there is a danger of unfair prejudice whenever an officer identifies a defendant because "[the defendant is] presented as a person subject to a certain degree of police scrutiny," [United States v. Butcher, 557 F.2d 666, 669 (9th Cir. 1977)], there is no per se rule against such testimony.  See Henderson, 68 F.3d at 327.  Rather, a court should consider "the interrelationship of lay identifications by police officers, other identification evidence, and the probative value requirement of Federal Rule of Evidence 403."  Id.  "[I]f the only identification evidence is the officer's lay opinion testimony ... a district court will not abuse its discretion if it determines the probative value of the evidence outweighs its prejudicial effect."  Id.

Henderson, 241 F.3d at 651 (some alternation in original) (emphases added).

In Thompson, the defendant argued there would be prejudice by allowing identification testimony from law enforcement officers because a complete and uninhibited cross-examination regarding the witness's familiarity is not possible since questions could reveal information about the defendant's criminal past and unfairly cause the jury to focus on that.  49 N.E.3d at 406.  The defendant thus argued law enforcement officers should not be allowed to offer lay opinion identification testimony.  Id.  The Supreme Court of Illinois rejected this argument.  Instead, it acknowledged the "precautionary procedures" approved by the Fourth Circuit Court of Appeals in Allen, 787 F.2d at 937–38, and held:

---

[8]  FRE Rule 403 and HRE Rule 403 are materially similar.

14

> when the State seeks to introduce lay opinion identification testimony from a law enforcement officer, <u>the circuit court should afford the defendant an opportunity to examine the officer outside the presence of the jury</u>. This will provide the defendant with an opportunity to explore the level of the witness's familiarity as well as any bias or prejudice. Moreover, <u>it will allow the circuit court to render a more informed decision as to whether the probative value of the testimony is substantially outweighed by the danger of unfair prejudice</u>. Although a witness may identify himself as a law enforcement officer, his <u>testimony involving his acquaintance with the defendant should consist only of how long he knew the defendant and how frequently he saw him or her</u>. Moreover, <u>to lessen any concerns regarding invading the province of the jury or usurping its function, the circuit court should properly instruct the jury, before the testimony and in the final charge to the jury</u>, that it need not give any weight at all to such testimony and also that the jury is not to draw any adverse inference from the fact the witness is a law enforcement officer if that fact is disclosed.

<u>Thompson</u>, 49 N.E.3d at 407 (emphases added) (citing <u>Henderson</u>, 68 F.3d at 328 (approving a cautionary instruction that stated officer's identification "was simply an opinion and if it did 'not assist you, then you need not give it any weight at all" and further instruction that jury "should not draw any adverse inference from the fact [the identifying witness] is a police officer.").

Here, the only identification evidence was Officer Soto's and Officer Maekawa's lay opinion testimony. The Circuit Court further concluded, after an HRE Rule 403 balancing analysis, that the probative value of this testimony was not substantially outweighed by the danger of unfair prejudice. In its analysis, the Circuit Court addressed whether the evidence would be cumulative, stating:

> I don't believe that if Ms. Robello-Passi[9] testifies, that would preclude Mr. Soto or Mr. Maekawa from testifying. The State's able to proffer as much evidence as it feels is sufficient to prove a case. It does have the burden of proof. The defense might engage in a vigorous cross-examination of Ms. Robello-Passi which would undermine her testimony and, therefore, making the testimony of officers Soto and Maekawa more critical. But even if the defense didn't undermine Robello-Passi's credibility, the State is permitted to satisfy its burden of proof through this testimony. Now, I certainly wouldn't allow six

_____

[9] The State called Robello-Passi as a witness in Gabriel's trial, but Robello-Passi asserted her right not to testify.

15

> officers to come in. But two officers, in my view, is reasonable and is not cumulative.

In addressing whether the probative value of the police officers' testimony is substantially outweighed by the danger of unfair prejudice, the Circuit Court reasoned:

> I do feel that the prejudice [sic] is not substantially outweighed also because of Soto's contacts really being not contacts in the sense of we've arrested this guy and he's in the interrogation room with us. In fact, he said he never did arrest him. It was just sort of in public areas.
>
> Now, Maekawa, on the other hand, did say he arrested Mr. Gabriel one time. And <u>I'm not going to permit any testimony about the arrest. You can talk about interactions.</u> I want you to use the phrases interactions or contacts. Any other term is liable to perhaps result in unfair prejudice. I'm not saying it would, but that's how we got to keep it. So as far as the parameters of the testimony of these witnesses, we'll refer to it as interactions, not any arrests. <u>Keep it to the -- sort of the number of times, the duration of the contact with the defendants, and keep it at that.</u>
>
> <u>I am going to instruct the jury so that it's crystal clear</u>, . . . I'm open to giving an instruction that the jury can't draw any adverse inferences from the contacts with the law enforcement. <u>I think I'm going to give it, and I'll entertain any suggestion the defense might have as to any limiting instruction I would give, but I think it would be warranted.</u>
>
> Defense made an assertion that if the evidence is permitted that it might thwart its ability to fully cross-examine the officers. I'm not thwarting you at all. I think if you look at the <u>Van Arsdall</u>[10] case – that's a U.S. Supreme Court case on the Sixth Amendment and the right to confrontation -- is that as long as the defense has the right to confront the defense [sic], it's not foreclosed from establishing any bias or prejudice through cross-examination. So you can cross them as much as you want on these issues. Your defense is not foreclosed in any way in cross-examining the witnesses as to their basis of their lay opinion testimony.
>
> So for all those reasons, the officers' testimony will be permitted.
>
> I do want to caution the prosecution. When you're talking about interactions between Gabriel, Malgana,

---

[10] <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678-79 (1986) ("[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.") (citation omitted).

> Robello-Passi, again, similar to the other point, <u>we want to stay away from arrests or any type of criminality.</u>

(Emphases added.)  During the Rule 104 Hearing and subsequent trial, the precautionary procedures outlined in <u>Thompson</u> were observed.  The police officers' testimony was confined to interactions only, not arrests.  The details of these interactions included the number of times with each defendant, their duration, and when discussing Gabriel, the police officers' distance from Gabriel.  Moreover, the Circuit Court issued two cautionary instructions regarding each of the police officers' testimony about previous contacts with Gabriel and the co-Defendants, in accordance with HRE Rule 105.[11]  The jury was told before each police officer's testimony and in the final charge not to draw an adverse inference from the fact that the identification was made by police officers.

Given this record and the Circuit Court's HRE Rule 403 balancing analysis, we conclude the Circuit Court did not abuse its discretion in admitting the police officers' identification evidence under HRE Rule 403.

### C.   The Circuit Court did not err in failing to provide the jury with an eyewitness identification instruction.

In his third assertion of error, Gabriel contends the Circuit Court erred in not instructing the jury, *sua sponte,* on eyewitness identification, thus affecting Gabriel's substantial rights to a fair trial.  Gabriel also contends that because there was no eyewitness to the burglary, the Circuit Court erred in failing to exercise its discretion to provide the jury a "specific eyewitness instruction" under the circumstances of "this particular case."

---

[11]  HRE Rule 105 provides:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

> When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.
>
> Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.  Error is not to be viewed in isolation and considered purely in the abstract.  It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.  In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.  If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

Stanley v. State, 148 Hawaiʻi 489, 500–01, 479 P.3d 107, 118–19 (2021) (citation omitted).

Gabriel relies on the holding in State v. Cabagbag, 127 Hawaiʻi 302, 277 P.3d 1027 (2012), that "in criminal cases, the circuit courts must give the jury a specific eyewitness identification instruction whenever identification evidence is a central issue in the case, and it is requested by the defendant, . . . [however,] a circuit court may, in the exercise of its discretion, give the instruction if it believes the instruction is otherwise warranted in a particular case[.]"  Id. at 304, 277 P.3d at 1029 (emphases added) (footnote omitted).

In Cabagbag, the Hawaiʻi Supreme Court considered the problems of eyewitness identification testimony and acknowledged research findings of variables that affect the accuracy and reliability of eyewitness identification, such as "passage of time, witness stress, duration of exposure, distance, 'weapon focus' (visual attention eyewitnesses give to a perpetrator's weapon during crime, and cross-race bias (eyewitness more

accurate at identifying persons of their own race)."  Id. at 310-11, 277 P.3d at 1035-36 (footnotes omitted).  The Hawaiʻi Supreme Court reasoned that "[w]ithout appropriate instructions from the court, the jury may be left without sufficient guidance on how to assess critical testimony, sometimes the only testimony, that ties a defendant to an offense."  Id. at 313, 277 P.3d at 1038.

Gabriel's reliance on Cabagbag is misplaced.  Although the identification of Gabriel as one of the burglars was a central issue in this case, Gabriel did not request an eyewitness identification instruction during the settling of instructions.  Accordingly, the Circuit Court was not required to issue an eyewitness identification instruction and committed no error.  Moreover, there were no eyewitnesses to the burglary and the police officers did not testify as eyewitnesses to the burglary, rendering an eyewitness identification instruction inconsistent with the evidence in the case.  As noted in Cabagbag, the reliability of eyewitness testimony depended, in part, on "the opportunity . . . to view the criminal at the time of the crime[.]"  Cabagbag, 127 Hawaiʻi at 309, 277 P.3d at 1034 (citation omitted).  The circumstances in this case are different.

We recognize, however, that the Hawaiʻi Supreme Court has emphasized the requirement that trial courts "issue a legally correct limiting instruction," derived from "the trial courts' . . . duty and ultimate responsibility to insure that juries are properly instructed on issues of criminal liability."  State v. Gallagher, 146 Hawaiʻi 462, 475, 463 P.3d 1119, 1132 (2020) (quoting State v. Adviento, 132 Hawaiʻi 123, 137, 319 P.3d 1131, 1145 (2014)); see also HRE Rule 105.  Here, the Circuit Court fulfilled this duty and issued nearly identical limiting instructions during the direct examinations of Officer Maekawa and Officer Soto, stating:

> You have heard evidence that the defendant, Bradley Gabriel, at another time may have had a prior contact or interaction with a Honolulu Police Department officer.  The evidence, if believed by you, may be

19

> considered only on the issue of the defendant's identity as the person who committed the offense charged.  Do not consider the evidence for any other purpose.  You must not use this evidence to conclude because the defendant, at another time, may have had prior interactions or contacts with the Honolulu Police Department officer that he is a person of bad character and, therefore, must have committed the offense charged in this case.  You must not draw any adverse inference against Mr. Gabriel from the fact that the witness is a law enforcement officer.  In considering the evidence for the limited purpose for which it has been received or will be received, you must weigh it in the same manner as you would all other evidence in the case and consider it along with all other evidence in this case.  If believed, you may give the evidence such weight as you feel it deserves but only for the limited purpose that I described to you.

(Emphases added.)  In addition, the Circuit Court's final instructions reminded the jury about the limiting instructions the court had previously given,[12] and included an instruction pertaining to the credibility of witnesses.[13]

---

[12]  Court's Instruction No. 1.5, Direct and Circumstantial Evidence; Weight of the Evidence states, in pertinent part:

> During the course of the trial, I instructed you that certain evidence was received for a particular and limited purpose.  Therefore, you must consider that evidence only for that limited purpose and not for any other purpose.

[13]  Court's Instruction No. 1.6, Credibility of Witnesses, provides, in part:

> You are the exclusive judges of the credibility, or "believability," of each witness and the weight and value to be given to the witness' testimony.
>
> In evaluating the credibility, accuracy, weight, value, and effect of a witness' testimony, you may want to consider such questions as:
>
> 1.    What was the general reasonableness, probability, or improbability of the witness' testimony in light of all the evidence?
>
> 2.    What was the extent to which the witness' testimony was supported or contradicted by other evidence?

(continued...)

Considering the instructions as a whole, we conclude the Circuit Court did not commit plain error by not giving a specific jury instruction on eyewitness identification.

_____

(...continued)

3.    Did the witness testify in a candid, frank, upfront, forthright or open way or testify in a way lacking these qualities.

4.    What was the witness' demeanor and manner of testifying?

5.    Was the witness' testimony uncertain, confused, or evasive?

6.    Did the witness clearly see or hear things about which she or he testified?

7.    Did the witness have a good memory of the things about which she or he testified?

8.    Was the witness' ability to see, hear, remember or describe the matters about which she or he testified affected by youth, old age, any physical, mental or intellectual deficiency, or intoxication?

9.    What was the witness' relation, if any, to a party or other witness?

10.    What was the witness' bias, if any was shown?

11.    What was the witness' means and opportunity of acquiring information?

12.    What was the extent to which the witness made contradictory statements, whether in trial or at other times?

13.    Did any inconsistencies or discrepancies in the testimony of the witness or between the testimony of different witnesses concern matters of importance, or only matters of unimportant details, and did they result from innocent mistake, mis-recollection or lapse of memory, or from an intentional or deliberate falsehood?

These questions are not placed in any order of importance and are not meant to be all-inclusive with regard to your evaluation of the credibility of a witness and the weight and value to be given to the witness' testimony.  You should consider all circumstances and factors surrounding the witness and bearing upon her or his credibility.

## III. Conclusion

Based on the foregoing, the "Judgment of Conviction and Sentence; Notice of Entry," entered by the Circuit Court of the First Circuit on July 30, 2019, is affirmed.

DATED:  Honolulu, Hawaiʻi, April 29, 2022.

On the briefs:                          /s/ Lisa M. Ginoza
                                        Chief Judge
Randal I. Shintani,
for Defendant-Appellant                 /s/ Keith K. Hiraoka
                                        Associate Judge
Stephen K. Tsushima,
Deputy Prosecuting Attorney,            /s/ Clyde J. Wadsworth
for Plaintiff-Appellee                  Associate Judge