**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                              No. 01-4335

WILLIAM LEE PATTERSON,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CR-00-187)

Argued: December 6, 2001

Decided: January 18, 2002

Before WILKINS and WILLIAMS, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Williams and Senior Judge Hamilton joined.

## COUNSEL

**ARGUED:** Douglas Fredericks, Norfolk, Virginia, for Appellant.
Laura Marie Everhart, Assistant United States Attorney, Norfolk, Vir-
ginia, for Appellee. **ON BRIEF:** Kenneth E. Melson, United States
Attorney, Norfolk, Virginia, for Appellee.

**OPINION**

WILKINS, Circuit Judge:

Appellant William Lee Patterson was convicted of possession with the intent to distribute cocaine base, *see* 21 U.S.C.A. § 841(a)(1) (West 1999), and aiding and abetting possession with the intent to distribute cocaine base, *see* 18 U.S.C.A. § 2(a) (West 2000). He contends that the district court erred by (i) refusing to dismiss the charges for lack of a speedy trial and (ii) admitting laser-generated images of his fingerprints. We affirm.

I.

We first address Patterson's claim that the district court erred in denying his motion to dismiss this case pursuant to the Speedy Trial Act (STA) of 1974, *see* 18 U.S.C.A. §§ 3161-3174 (West 2000). The STA imposes a 70-day deadline for commencing trial. *See id.* § 3161(c)(1). Certain periods are excluded from STA computations, however. As is relevant here, excludable periods include "[a]ny period of delay resulting from the absence or unavailability of . . . an essential witness," *id.* § 3161(h)(3)(A), and "[a]ny period of delay resulting from a continuance granted . . . on the basis . . . that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," *id.* § 3161(h)(8)(A). There are no facts in dispute, so we review the application of these provisions de novo. *See United States v. Jarrell*, 147 F.3d 315, 317 (4th Cir. 1998).

Patterson contends that the district court erred by granting a continuance on December 29, 2000 to enable the Government to secure the attendance of a witness named Jermaine Green. At the time, trial was scheduled to begin on January 4, 2001, near the end of the 70-day period. The December 29 continuance postponed the trial until February 1, 2001.

According to the undisputed evidence presented at the hearing on the Government's motion, the Government properly subpoenaed Green for Patterson's trial. Shortly before the trial was scheduled to

begin, however, Green was arrested in South Carolina on charges of homicide and assault with intent to kill. Deputy Marshal Nicholas Proffitt testified that the United States Marshals Service (USMS) could bring Green to Norfolk, Virginia in time for trial but that doing so would require chartering a plane or driving to South Carolina, because the charges against Green would preclude the use of commercial air travel. Moreover, having to dispatch personnel for this purpose would create "a hardship" for the USMS. J.A. 21.

Another obstacle to retrieving Green in time for trial was that Green had a hearing scheduled in state court in South Carolina on January 8, 2001. While the district court had the power to compel Green's custodians to surrender him to the USMS, the court found that it was unlikely that a writ of habeas corpus *ad testificandum* could even be served before January 2, 2001 (the next business day after the hearing). There was also speculation that South Carolina might refuse to comply with the writ in light of Green's imminent hearing concerning the very serious charges he was facing; the Government did not contact any South Carolina officials to inquire about this, however, and the district court did not mention this possibility when it granted the continuance.

Acting through a duty judge, the district court noted two grounds for granting a continuance. First, the court ruled that "as a practical matter [Green] is unavailable." *Id.* at 22. Second, the court found that "the interests of the defendant and the public in a speedy trial [are] outweighed by the ends of justice in requiring a continuance." *Id.* at 23. We hold that the continuance was proper for both of the reasons stated.[1]

Patterson concedes that Green was an essential witness but contends that § 3161(h)(3)(A) is nonetheless inapplicable because the

---

[1]In light of our holding, we do not reach a related argument presented by Patterson. Following trial, Patterson moved for judgment of acquittal based on the alleged STA violation. The trial judge denied this motion on the basis that the duty judge's determination was the law of the case. Because there was no STA violation, the denial of the motion for judgment of acquittal was proper regardless of whether the trial judge's analysis was correct.

Government could have secured Green's presence. He relies in particular on Marshal Proffitt's statement to the court that the USMS "would have [Green] here on the day you told us to have him here." *Id.* at 21. This argument ignores the remainder of Proffitt's testimony, however. Proffitt advised the court—and Patterson does not dispute—that transporting Green would impose a "hardship" on the USMS. *Id.* Such exertion is not required by the STA; instead, a witness is considered unavailable for purposes of § 3161(h)(3)(A) if "his presence for trial cannot be obtained by due diligence." 18 U.S.C.A. § 3161(h)(3)(B); *see Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000) (holding that a "due diligence" standard "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence"). Because the undisputed facts demonstrate that Green's presence could not be secured through reasonable efforts, the district court did not err in granting a continuance.[2]

In addition, the continuance was proper based on the determination by the district court that postponing the trial served the interests of justice to an extent that outweighed conflicting interests in a speedy trial. In this regard, it is significant that removing Green from South Carolina would have interfered with a state prosecution there. *See United States v. Lopez-Espindola*, 632 F.2d 107, 111 (9th Cir. 1980) (stating that courts generally should not apply the STA in a manner that results in disruption of state criminal proceedings). Furthermore, as noted by the district court at the December 29 hearing, Patterson did not allege that any prejudice would result from the requested continuance. For these reasons, the December 29 continuance was proper under § 3161(h)(8) as well as § 3161(h)(3).

## II.

Patterson's second claim is that the district court erred in allowing

---

[2]Patterson contends that the Government did not act diligently because it did not request a writ of habeas corpus or inquire whether Green's custodians would comply with such a writ. At most, this argument suggests that the Government might have been able to acquire custody of Green; it does not negate the fact that the USMS could not have transported Green to Norfolk in time for the original trial date without hardship.

the Government to introduce certain fingerprint evidence. We hold that there was no reversible error.

After Patterson was arrested, a sheriff's deputy used a Digital Biometrics Tenprinter to produce an image of Patterson's fingerprints. At trial, the deputy explained that this device is

> sort of like a laser scanner. The easiest way I could say, to give you a general idea about it, would be like going to the supermarket . . . where they scan your bar code for prices, it's similar to that. It reads — it actually picks up the ridges on your fingers.

J.A. 29. The deputy admitted that this testimony was based on what he had been told by others; although he used the Tenprinter every day and had processed at least a thousand people with it, he did not know how it worked. Furthermore, the accuracy of fingerprints recorded by the Tenprinter had neither been confirmed nor challenged by any person whose prints the deputy had processed.

Patterson objected to this testimony regarding the Tenprinter and to the admission of the fingerprint image produced by the machine ("the Tenprinter image"). The district court overruled these objections, holding that this evidence was admissible in light of the deputy's extensive experience operating the Tenprinter. Subsequently, an expert witness testified that one of the prints on the Tenprinter image matched a print recovered from a bag containing cocaine base that the police discovered during their investigation of Patterson. No laser device was used to locate or make a record of the fingerprint on the bag.

We hold initially that the admission of the deputy's testimony describing the operation of the Tenprinter was, at worst, harmless error. The deputy's lack of knowledge about the mechanism within the Tenprinter and the accuracy of the fingerprint images it produced undercut the probative value of his testimony regarding these issues. Because this lack of knowledge was highlighted during defense counsel's skillful cross-examination, however, there is no likelihood that the jury was misled into accepting testimony that the deputy was not qualified to offer. *See United States v. Williams*, 81 F.3d 1321, 1326

(4th Cir. 1996) (holding that error in admission of evidence is harmless if improper evidence did not substantially influence jury).

As for the Tenprinter image, we hold that it was properly authenticated. Under the Federal Rules of Evidence, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." Fed. R. Evid. 901(a). To meet the threshold established by Rule 901(a), the party seeking to introduce physical evidence must provide "a basis for the jury to resolve the authenticity question in favor of" that party. *United States v. Capers*, 61 F.3d 1100, 1106 (4th Cir. 1995). We review decisions of a district court regarding authentication for abuse of discretion. *See United States v. Patterson*, 150 F.3d 382, 387 (4th Cir. 1998).

Questions of authentication take many forms. *See, e.g., United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000) (whether e-mail message was authored by defendant), *cert. denied*, 121 S. Ct. 2573 (2001); *United States v. Trujillo*, 146 F.3d 838, 843-44 (11th Cir. 1998) (whether paper identified by officer was same paper removed from defendant's mouth by different officer). The question here is whether the Government offered sufficient evidence to demonstrate that the Tenprinter image reliably depicted Patterson's fingerprints. Issues of this nature arise frequently in the context of photographs, and we therefore look to cases involving the admission of photographic evidence.

The necessary foundation for the introduction of a photograph is most commonly established through eyewitness testimony that the picture accurately depicts the scene in question or expert testimony that the picture was generated by a reliable imaging process. *See United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988). Here, there was no Government witness who had examined Patterson's fingers and could verify that they were accurately rendered on the Tenprinter image. Also, while the deputy who operated the Tenprinter offered brief testimony about how it functioned, his lack of expertise rendered his testimony insufficient to prove the reliability of the device. Thus, the admission of the Tenprinter image was not supported by either of the most common evidentiary foundations. An adequate foundation was provided, however, by "internal patterns[ ]

or other distinctive characteristics, taken in conjunction with circum-stances." Fed. R. Evid. 901(b)(4). Specifically, the testimony that one of the fingerprints recorded by the Tenprinter matched the fingerprint recovered from the drug container, if credited by the jury, provided compelling evidence that the Tenprinter reliably imaged Patterson's fingers; the alternative—that the machine generated an inaccurate fin-gerprint image that happened to be identical to a fingerprint recovered by a different person using a different process in a different location —is simply implausible. *See People v. Webb*, 862 P.2d 779, 798 (Cal. 1993) (en banc). Accordingly, the introduction of this evidence pro-vides no basis for relief.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*