NOT RECOMMENDED FOR PUBLICATION

File Name: 21a0357n.06

Case No. 20-3310

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| QIAN WILLIAMS, | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| *Defendant-Appellant*. | ) | OHIO |
| | ) | |

> **FILED**
> Jul 21, 2021
> DEBORAH S. HUNT, Clerk

**Before:  BATCHELDER, WHITE, and DONALD, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.**  Qian Williams appeals three rulings by the district court following his convictions by a jury for drug and firearm offenses.  We AFFIRM.

**I.**

On August 17, 2017, a DEA Agent in a federal-state-local task force applied to a Hamilton County (Ohio) Municipal Court for a search warrant for two neighboring residential houses: 1412 Randomhill Road and 1416 Randomhill Road.  The affidavit described the task force's evidence, including multiple large-scale controlled drug buys, that showed probable cause to believe that Qian Williams was a mid- to upper-level dealer of heroin and cocaine, using those houses.  The court issued the warrant, and the task force executed the search and seized additional evidence.

On October 5, 2017, the task force obtained another warrant for the 1416 property, executed that warrant, and arrested Williams when he fled the rear of the property carrying drugs.  The federal grand jury indicted Williams on eight counts related to heroin, cocaine, and guns.

On July 17, 2018, Williams moved to dismiss the indictment, claiming the warrants were invalid because "[f]ederal agents have no authority to execute a warrant issued by a Hamilton County judge." Following an evidentiary hearing on August 27, 2018, the court denied the motion, explaining that the warrant was obtained and executed by the federal-state-local task force which may lawfully execute a state-court-issued search warrant.

Williams moved the court to reconsider, arguing that the DEA Agent violated Federal Criminal Rule 41(b)(1), which allows a state court to issue a warrant to a federal agent when a federal magistrate judge is unavailable. Williams argued that, because the federal agent did not show that a federal magistrate judge was not "reasonably available" to issue the warrant, the state warrant was invalid. The court denied the motion, holding that a joint federal-state task force can use a state-court-issued search warrant based on a state-law crime. *See United States v. Rich*, 2017 WL 4707486, at *8 (E.D. Mich. Oct. 20, 2017); *United States v. Duval*, 742 F.3d 246, 254 (6th Cir. 2014); *United States v. Bennett*, 170 F.3d 632, 635 (6th Cir. 1999).

On October 24, 2018, Williams moved to dismiss under the Speedy Trial Act (STA), but the district court explained that the STA's 70-day rule is subject to excludable periods, such as for the court's consideration of motions, pre-trial proceedings, competency examinations, and other procedural matters. The court recounted the procedural history, determined that Williams had not shown 70 days of non-excluded delay, and denied the motion.

From September 11 to 18, 2019, the Government tried the case to a jury, which convicted Williams on all eight counts. The court sentenced Williams to 420 months in prison.

## II.

Williams says the search warrant was invalid because a federal agent cannot obtain a warrant from a state court unless the agent shows that a federal magistrate judge was unavailable to issue it, and the agent here did not do so. The district court rejected this claim several times.

In an appeal of a denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions de novo, viewing the evidence in the light most favorable to the government. *United States v. Snoddy*, 976 F.3d 630, 633 (6th Cir. 2020).

Criminal Rule 41(b)(1) allows a state court to issue a search warrant to a federal agent if a federal magistrate judge is unavailable. According to Williams, this means that a federal agent's "participation" requires that the warrant may be issued only by a federal court.

Williams is wrong. In a task-force investigation by state and federal authorities, the officers have the flexibility to seek a warrant from the state court based on state law violations, and the Federal Rules of Criminal Procedure do not apply. *Duval*, 742 F.3d at 254. In the warrant request here, the DEA Agent, joined by a Cincinnati Police Officer, claimed probable cause to believe that Williams was dealing heroin, in violation of O.R.C. §§ 2925.11 and 2925.03.

But, even if the task force had violated Rule 41, that would trigger the exclusionary rule only if "1) there was prejudice in the sense that the search might not have occurred or would not have been so intrusive if the Rule had been followed, or 2) there is evidence of intentional and deliberate disregard of a provision of [Rule 41]." *United States v. Hopper*, 58 F. App'x 619, 627 (6th Cir. 2003) (citing *United States v. Searp*, 586 F.2d 1117, 1125 (6th Cir. 1978)). Williams has not claimed any prejudice, in the district court or here, from the state-rather-than-federal warrant. He never claimed that a federal magistrate judge would have denied the warrant, that the scope of the search would have been different, or that the searches were unconstitutional. There is no reason to doubt that, had the officers applied to a federal magistrate judge, they would have obtained the same warrant, conducted the same searches, and seized the same evidence.

Moreover, Williams has no evidence that the officers intentionally or deliberately circumvented Rule 41(b)(1). The record shows that, when the officers sought the search warrants, there had been no decision as to whether to prosecute Williams at the state or federal level. In fact,

both officers testified that the decision to pursue any charges at all against Williams was not made until over a month later, when Williams stopped cooperating with law enforcement.

Finally, contrary to Williams's conclusory claim, a violation of Rule 41(b) does not render a state-issued search warrant void *ab inicio*. It merely raises the exclusionary rule, as just discussed. *See id.* That would also raise the good-faith exception, though we need not—and do not—consider that here. This claim has no merit.

### III.

Williams appeals the district court's denial of his Speedy Trial Act (STA) claim. We review the court's legal rulings de novo and its factual findings for clear error. *United States v. Sobh*, 571 F.3d 600, 602 (6th Cir. 2009). We review the court's grant of an ends-of-justice continuance for an abuse of discretion. *United States v. White*, 920 F.3d 1109, 1112 (6th Cir. 2019).

The STA requires that trial begin within 70 days of indictment or arraignment, whichever is later. 18 U.S.C. § 3161(c)(1); *United States v. Marks*, 209 F.3d 577, 586 (6th Cir. 2000). But the STA's 70-day rule has excludable periods for—among other things—the consideration of motions, pre-trial proceedings, and competency examinations. § 3161(h).

Williams contends that 137 STA days passed between his arraignment and his trial, exceeding the STA's permissible 70 days and making his conviction invalid. His count of 137 days is based on certain assumptions and calculations, the most significant being 75 days from the court's denial of the last motions (June 28) to the court-ordered start of trial (September 9).

The court scheduled trial for September 9 with an express finding that the STA clock was tolled (negating those 75 days that Williams relies on) while the prosecution coordinated with the U.S. Marshal Service to have two incarcerated witnesses appear to testify. Williams argues that only one of the two actually testified and offered minimal and inconsequential testimony, so the delay was "inherently unreasonable" and, therefore, a violation of the STA.

On June 28, the district court explained that starting trial on September 9 would comply with the STA because the Marshals would need eight weeks to secure the presence of the two incarcerated witnesses. *See* § 3161(h)(3)(A) ("Any period of delay resulting from the absence or unavailability of . . . an essential witness."); *United States v. Patterson*, 277 F.3d 709, 710-12 (4th Cir. 2002). The court also imposed an ends-of-justice continuance until September 9. *See* § 3161(h)(7) ("the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial"). The court found that the delay was necessary to afford counsel time for effective trial preparation after the numerous outstanding motions had been decided, which would ensure fairness and prevent a miscarriage of justice. On appeal, Williams challenges the first reason (to obtain witnesses) but not the second (ends of justice). The Government contends that the second reason decides this appeal.

The Government also argues that Williams forfeited a challenge to the June 28 continuance because he did not move to dismiss *after* the court's ruling and prior to trial. The STA says that a defendant waives the STA claim if he does not move the trial court for dismissal prior to trial. § 1362(a)(2); *United States v. Sherer*, 770 F.3d 407, 411 (6th Cir. 2014) ("A court need only consider alleged delay which occurs prior to and including the date on which the motion [to dismiss] is made [and the] right to challenge any subsequent delay is waived unless the defendant brings a new motion to dismiss."). On June 24, 2019, the court scheduled trial for September 9. At the same hearing, Williams moved for STA dismissal as of that date, which the court denied orally and explained in more detail in the June 28 order. Williams never moved the court for STA dismissal after June 24, but the court's June 28 order noted William's continuing objection.

Even if Williams did not waive the STA claim, the court's ends-of-justice continuance was not an abuse of discretion. When a district court exercises its discretion to grant a continuance based on an ends-of-justice finding, the defendant must show actual prejudice to obtain a reversal

5

of a conviction under the STA. *United States v. Stewart*, 628 F.3d 246, 254 (6th Cir. 2010). Williams has not alleged or even alluded to any prejudice. This claim has no merit.

**IV.**

Williams appeals the district court's denial of his Criminal Rule 29 motion for acquittal based on insufficient evidence. We review de novo to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mathis*, 738 F.3d 719, 735 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In making this determination, however, we may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Id.* (quotation marks and citation omitted).

In briefing this appeal, Williams's attorney has expressly accused (1) the task force agents of planting evidence and committing perjury, (2) the prosecutor of suborning perjury and committing fraud on the court, and (3) the district court judge of participating in this illegality. There is no dispute about the facts that underlie these accusations:

(1)     A man named Crittenden, subject to the same investigation, had entered a guilty plea in a separate case prosecuted in federal court in Kentucky.

(2)     A forfeiture charge in Crittenden's case listed six specific guns, asserting that they were seized during a search of Crittenden's residence in July 2017.

(3)     Williams's indictment charged him with possessing those same six guns.

(4)     The prosecution witnesses at Williams's trial testified that task force agents seized those guns from Williams's home during the August 2017 search.

Williams's attorney contends that these facts have only one explanation: the task force seized those guns from Crittenden in July, planted them at Williams's house, and lied about finding them at Williams's house in August. Moreover, he insists, the prosecutor must have known about and suborned this perjury, and the district court must have known and "acquiesced" to it.

At Williams's trial, multiple officers testified that they found those guns at Williams's home during the August 2017 search, and that Williams had admitted they were his. On cross-examination of the DEA Agent, the defense produced the forfeiture indictment from Crittenden's case, which listed those exact same six guns by description and serial number, as proof that those six guns were seized from Crittenden during the July 2017 search of his house. The DEA Agent testified that those guns must have been listed in Crittenden's forfeiture indictment by mistake, explaining that Crittenden was the task force's original target when the investigation began, so his case file was the main case file, and the guns were likely misfiled under that case file. The DEA Agent further explained that he had not been involved when the federal prosecutor in Kentucky prepared Crittenden's forfeiture indictment in January 2018 and, apparently, it was mistaken.

Because the jury convicted Williams as charged, we must conclude that the jury believed this explanation. "A trial witness's credibility [] is not relevant on review of a Rule 29 motion for judgment of acquittal." *United States v. Cordero*, 973 F.3d 603, 614 (6th Cir. 2020) (quotation marks omitted). "It was the jury's prerogative to believe what [the witness] had to say." *Id*.

**V.**

We AFFIRM the judgment of the district court.

7