**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.19-50182 |
| *Plaintiff-Appellee*, | D.C. No. 2:14-cr-00328-CAS-1 |
| v. | |
| DOMINIC DORSEY, AKA Boo, AKA Boogaloo, AKA Dominic Cavanaughn Dorsey, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted May 15, 2024
Pasadena, California

Filed December 4, 2024

Before: Daniel P. Collins, Holly A. Thomas, and Anthony
D. Johnstone, Circuit Judges.

Opinion by Judge Johnstone;
Concurrence by Judge Collins

# SUMMARY[*]

## Criminal Law

The panel affirmed Dominic Dorsey's conviction for multiple federal crimes arising from a spree of robberies committed by two disguised men.

The evidence at trial included video from security cameras that recorded the robberies. A police detective testified, as a lay witness, about his out-of-court review of the surveillance video. Under Federal Rule of Evidence 701, a lay witness may offer testimony in the form of an opinion if it is "helpful . . . to determining a fact in issue."

Based on his close and repeated out-of-court review, the detective opined on details in the video that the jury may otherwise have missed. The panel held that such lay opinion testimony is admissible because the witness's out-of-court review of the video adds value beyond simply playing the video to the jury and may be helpful "to determining a fact in issue." Fed. R. Evidence. 701(b).

The detective also opined, based on his own comparison of those details that were in evidence before the jury, that the disguised robbers shown on the surveillance video were Dorsey and his codefendant, Reginald Bailey. When a witness identifies an unknown person in an image, that opinion is not "helpful" under Rule 701 unless the witness has some personal knowledge or experience that supports a more informed identification than the jury can make on its

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

own. The panel held that the detective's opinion testimony identifying Dorsey and Bailey as the disguised robbers was not "helpful" under Rule 701 because the detective testified based on evidence already in front of the jury, without the requisite personal knowledge or experience. The district court therefore abused its discretion by allowing the testimony.

The panel held that the admissible evidence at trial and the district court's instructions rendered the inadmissible testimony harmless.

The panel addressed Dorsey's additional bases for appeal in a concurrently filed memorandum disposition.

Judge Collins concurred in the judgment. He wrote that he has substantial doubt that the majority is correct in holding that the district court abused its discretion in allowing the detective's challenged testimony, but concluded that any error that may have occurred on that score was more likely than not harmless.

## COUNSEL

Suria M. Bahadue (argued) and David R. Friedman, Assistant United States Attorneys, Criminal Appeals Section; Bram M. Alden, Assistant United States Attorney, Chief, Criminal Appeals Section; Justin R. Rhoades and Joseph D. Axelrad, Assistant United States Attorneys; E. Martin Estrada, United States Attorney; United States Department of Justice, Office of the United States Attorney, Los Angeles, California; Jeffrey M. Chemerinsky, Kendall Brill & Kelly LLP, Los Angeles, California; for Plaintiff-Appellee.

Michael Tanaka (argued), Law Office of Michael Tanaka, Los Angeles, California, for Defendant-Appellant.

**OPINION**

JOHNSTONE, Circuit Judge:

A jury convicted Dominic Dorsey of multiple federal crimes arising from a spree of robberies committed by two disguised men. The evidence at trial included video from security cameras that recorded the robberies. A police detective testified, as a lay witness, about his out-of-court review of the surveillance video. Based on his review, the detective opined on details in the video that the jury may otherwise have missed. The detective also opined, based on his own comparison of those details that were in evidence before the jury, that the disguised robbers shown on the surveillance video were Dorsey and his codefendant, Reginald Bailey.

Under Federal Rule of Evidence 701, a lay witness may offer testimony in the form of an opinion only if it is "helpful . . . to determining a fact in issue." Fed. R. Evid. 701(b). But when a witness identifies an unknown person in an image, that opinion is not "helpful" under Rule 701 unless the witness has some personal knowledge or experience that supports a more informed identification than the jury can make on its own. The detective opined that the disguised robbers were Dorsey and Bailey without having that personal knowledge or experience. Thus, his identification opinions were not helpful and should not have been admitted. But the district court's error in allowing the testimony was harmless, and Dorsey's additional bases for

appeal lack merit.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Dorsey was tried and convicted for a series of robberies.

In the fall of 2013, two disguised men robbed a series of gas stations in the Los Angeles area. The robbers would enter a store, brandish a "cowboy-style" revolver, and demand that employees give up the contents of the cash register. They wore dark clothing, gloves, and hooded sweatshirts. The taller robber wore a black ski mask; the shorter robber placed a blue bandana over his face. After targeting gas stations for two months, the men ended their spree of armed robberies at a bank, where they made off with more than $55,000.

Dorsey came to the attention of law enforcement based on the robbers' frequent use of a dark-colored sedan. A witness reported seeing a black Nissan Altima with a license plate ending in "435" parked in an unusual location by one of the gas stations on the night it was robbed. Detective Christopher Marsden, an investigator with the Los Angeles Police Department, identified a car matching this description. Further investigation showed that the car belonged to Dorsey's girlfriend and that Dorsey was driving the vehicle around the time that the robberies took place. Although security cameras recorded each of the robberies, the robbers' disguises prevented law enforcement from identifying them from the video, so they relied on other evidence to make the initial identification.

---

[1] Dorsey raised two other bases for appeal in his opening brief which we have addressed in a separate memorandum disposition filed concurrently with this opinion.

Over the next few months, investigators discovered further evidence connecting Dorsey to the robberies and to a second suspect, Reginald Bailey. Law enforcement arrested Dorsey and Bailey in June 2014, and the trial at which they were convicted began in July 2016. At trial, Detective Marsden offered a wide range of lay opinions about the steps he took during his investigation and various conclusions that he reached. The detective also opined about the contents of the surveillance video of the robberies, which was admitted in evidence.

Detective Marsden offered two types of opinions about the surveillance video, which he had pored over before trial. First, he opined about details that the jury might otherwise have missed, such as the markings on the robbers' shoes. These opinions were grounded in the video itself and the detective's thorough out-of-court review of that video. The district court admitted this narrative testimony under Rule 701. Second, Detective Marsden opined that the disguised robbers shown in the surveillance video were Dorsey and Bailey. These identification opinions rested on evidence already in front the jury: still images of the robbers and of Dorsey and Bailey, and the detective's own comparison of the details in those images. The district court also admitted this identification testimony under Rule 701, despite objections from the defense.

After eight days of trial, the jury returned guilty verdicts on all charges against both Dorsey and Bailey. The district court sentenced Dorsey to a term of imprisonment of 40 years. Dorsey timely appealed. Where, as here, the district court has admitted testimony over an objection, we review the district court's decision for abuse of discretion, and its interpretation of the Federal Rules of Evidence de novo. *United States v. Waters,* 627 F.3d 345, 351 (9th Cir. 2010).

## II. The detective's identification opinions were inadmissible under Federal Rule of Evidence 701.

Before Rule 701, courts distinguished between admissible fact testimony and inadmissible opinion testimony. *United States v. Gadson*, 763 F.3d 1189, 1206 (9th Cir. 2014) (noting the "then-prevailing evidentiary principles" which limited lay witness testimony to factual observations). Non-expert or "lay" witnesses were typically barred from presenting opinion testimony on the grounds that it "would mislead juries." *Id.* Rule 701 rejected these rationales and liberalized the admission of lay opinion testimony. *Id.* Rule 701 permits a witness to offer lay opinions that are "rationally based on the witness's perception." Fed. R. Evid. 701(a); *see also* Fed. R. Evid. 602 (requiring a lay witness to have "personal knowledge of the matter" testified to unless it is expert testimony). The opinions must also be "helpful" to the jury in "clearly understanding the witness's testimony" or "determining a fact in issue." Fed. R. Evid 701(b). And they must be based on the witness's personal knowledge or experience, rather than the "specialized" knowledge of an expert. Fed. R. Evid. 701(c). Subject to these limitations, a wide range of lay opinion testimony—including by law enforcement officers in a criminal trial—is admissible under Rule 701. *See Gadson*, 763 F.3d at 1206–09 (describing the scope of admissible testimony under Rule 701).

Although much of Detective Marsden's lay opinion testimony was properly admitted, the district court erred by allowing the detective to opine that Dorsey and Bailey were the disguised robbers. These identification opinions were based on his assessment of still images from the robberies and pictures of Dorsey and Bailey that were in evidence before the jury. They did not meet "Rule 701's requirement

of helpfulness," because the detective was not "more likely to identify correctly the [robbers] than [was] the jury." *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993). Instead, the detective merely "spoon-fed his interpretations" of the evidence to the jury. *Gadson*, 763 F.3d at 1208 (quoting *United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013)). Thus, the identification opinions should have been excluded.

### A. Detective Marsden's narrative testimony about details appearing in the surveillance video of the robberies was admissible.

Law enforcement officers often testify in criminal trials about video footage. When a law enforcement officer points out particulars in a video that are based on a close and repeated out-of-court review and that a casual observer would likely miss, the testimony is lay opinion because the officer is contributing to the jury's in-court perception of the video. *See United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015). Such lay opinion is admissible because a juror, without the benefit of the officer's thorough review, might overlook the details highlighted by the officer's testimony. Thus, the officer's out-of-court review of the video adds value beyond simply playing the video to the jury and may be helpful "to determining a fact in issue." Fed. R. Evid. 701(b).

In both *United States v. Begay* and *Torralba-Mendia*, we explained that where a witness had watched video many times, the witness's narrative description of it was helpful because the witness could point out details that a casual observer was likely to miss. *See* 42 F.3d 486, 502–03 (9th Cir. 1994); *Torralba-Mendia,* 784 F.3d at 659–661. In *Begay*, the video at issue captured a chaotic and complex

mass demonstration, and we determined that a person "viewing a videotape of a demonstration involving over 200 people would likely not see certain details." 42 F.3d at 503. Because the testifying officer had viewed the original videotape "over 100 times," as well as "about 800 photographs" from the demonstration, he was allowed to create and narrate an enhanced video exhibit at trial. *Id.* at 502. We held that this was admissible lay opinion testimony. *Id.*

We reiterated this holding in *Torralba-Mendia*. There, a series of surveillance tapes recorded over several days showed cars "arriving and departing" from surveilled locations. *Id.* at 659. The testifying officer had "watched each video roughly fifty times." *Id.* The court permitted the officer to opine about "unique characteristics of the vehicles," point out "the length of time lapses between video clips," and highlight details like "the particular clothing of certain passengers." *Id.* at 559–60. We held that this testimony was "helpful" to the jury in "determining a fact in issue," Fed. R. Evid. 701(b), because it "helped the jury understand the import of the videos," *id.* at 660.

Detective Marsden took the witness stand on the third day of trial. The detective, who was not qualified as an expert witness, opined about the entire scope of his investigation into the so-called "Cowboy Gun Bandits." His testimony ran from his initial insights into the methods of the unknown robbers to the eventual arrest and post-arrest interview of Dorsey. Much of the detective's testimony described surveillance video of the robberies. Detective Marsden highlighted visible features of the disguised robbers: the taller robber consistently wore a pair of gray sneakers with silver eyelets, separated from a white sole by a black line; the shorter robber often wore gray or dirty white sneakers,

and a frame-by-frame review of the video revealed that he had glasses, was bald, and was missing a finger on his left hand.

As in *Begay* and *Torralba-Mendia*, Detective Marsden's narrative testimony was an opinion because he drew on his extensive out-of-court review of the surveillance video in contributing to the jury's perceptions of that evidence. This thorough review allowed him to highlight salient, but minor, details that the jury might otherwise have missed. In turn, his testimony helped the jury to "discern correctly and efficiently" those details. *Begay*, 42 F.3d at 503. It was therefore properly admitted under Rule 701. *See id.; Torralba-Mendia*, 784 F.3d at 659–60.

## B. Detective Marsden's testimony identifying Dorsey and Bailey as the disguised robbers was inadmissible.

Much of Detective Marsden's testimony about his observations was properly admitted, including his narrative testimony about the details of the surveillance video. But he also made several forays into improper identification throughout his three days of testimony. On appeal, Dorsey directs his challenge to this testimony.

A witness may, with sufficient background knowledge of a person, offer a lay opinion identifying that person in an image subject to the limits of Rule 701. Such an identification may be admissible opinion testimony when it evaluates evidence before the jury by contributing to that evidence the witness's personal knowledge that the jury lacks. *See United States v. Henderson*, 68 F.3d 323, 326–27 (9th Cir. 1995) (explaining that an officer had "substantial knowledge" about the defendant's appearance that "the jury was unable to see"); *Gadson*, 763 F.3d at 1208 (explaining

that lay opinion testimony connects the evidence before the jury to "the witness's own understanding, including a wealth of personal information, experience, and education"). Such testimony is "helpful . . . to determining a fact in issue," Fed. R. Evid. 701(b), when the witness's personal knowledge means that "the witness is more likely to identify correctly the person than is the jury." *LaPierre*, 998 F.2d at 1465.

Whether a lay witness's identification opinion is "helpful" to the jury under Rule 701 depends on the totality of the circumstances. *United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005). We have previously recognized two situations in which an identification opinion has met "Rule 701's requirement of helpfulness." *LaPierre*, 998 F.2d at 1465. An identification opinion may be helpful, and therefore admissible, where "the witness has had substantial and sustained contact" with the defendant; or where "the defendant's appearance in the photograph is different from his appearance before the jury and the witness is familiar with the defendant as he appears in the photograph." *Id.* (collecting cases); *see also Beck*, 418 F.3d at 1015. Even so, we have explained that this kind of identification testimony is of "dubious value," especially when provided by a law enforcement officer, because it can create unfair prejudice and discourage jurors from drawing their own conclusions. *LaPierre*, 998 F.2d at 1465; *see also United States v. Butcher*, 557 F.2d 666, 670 (9th Cir. 1977) (cautioning that "lay opinion identification by [law enforcement] is not to be encouraged").

### 1. Detective Marsden's testimony identified Dorsey and Bailey as the disguised robbers.

After Detective Marsden highlighted the robbers' sneakers and other details in his narrative testimony about

the surveillance video, he went further to opine that his review of the video and images led him to identify Dorsey as the taller robber. Detective Marsden addressed two images that had been placed side-by-side before the jury. One showed the disguised robbers. The other showed Dorsey. Referring to the picture of the disguised robbers, Detective Marsden testified that the taller robber wore the "same sneakers" during every robbery. Then, turning to the picture of Dorsey, the detective testified that Dorsey was wearing the "same sneakers" as the taller robber. Finally, Detective Marsden testified that his assessment of the totality of the video—especially his conclusion that the taller robber and Dorsey wore the same sneakers—led him "to believe that Dominic Dorsey was the taller suspect." Thus, Detective Marsden's opinion testimony identified Dorsey based on surveillance video and still photos, evidence already in front of the jury.

As to the shorter robber, Detective Marsden's narrative testimony had specified that the suspect was bald, with glasses, dirty white sneakers, and a missing finger on his left hand. But, as with his testimony about Dorsey, Detective Marsden went even further and opined that his review of the video and images led him to identify Bailey as the shorter robber. For instance, the prosecution pulled up three pictures of the shorter robber taken from surveillance video at one of the gas stations. These three pictures were juxtaposed against a fourth, this one showing Bailey at another time and place. The prosecution elicited the detective's opinion, asking him to explain how the pictures "play[ed] a part in [his] investigation." Detective Marsden opined that he had identified Bailey as the shorter robber because Bailey, like the shorter suspect, was "bald and wearing glasses and

wearing the white shoes." Once again, this opinion identified Bailey based on evidence already in front of the jury.

### 2. *Detective Marsden's identification opinions were inadmissible.*

Detective Marsden's lay opinions identifying Dorsey and Bailey as the disguised robbers were "unhelpful" and therefore inadmissible under Rule 701 because that testimony did not provide reason to believe that Detective Marsden was more likely to identify correctly the robbers than was the jury. *See LaPierre*, 998 F.2d at 1465. The detective did not identify the disguised robbers based on his "sustained contact" with Dorsey and Bailey, *LaPierre*, 998 F.2d at 1465, nor any other personal knowledge about their appearance that the jury lacked, *Henderson*, 68 F.3d at 326–27. Detective Marsden served as the "lead investigator" of the crimes, and in that capacity testified to tracking down Dorsey through phone and vehicle records as well as unsuccessful attempts to follow his car. But these investigative steps focused on Dorsey's identity on paper. They did not provide the detective with personal knowledge of Dorsey's appearance, the basis of the detective's identification opinion.

Although Detective Marsden had arrested Dorsey, and interviewed him post-arrest, he did not testify that this limited personal contact helped him identify Dorsey as the taller suspect in the video. The government also relied on driver's licenses and booking photos, not the detective's personal recollection, to establish Bailey's appearance at the time of the crimes. While "we have not provided clear guidance as to the extent of contact sufficient to render lay opinion testimony rationally based and helpful to the jury," *Beck*, 418 F.3d at 1014, our "case-by-case approach" has

relied on multiple contacts over a long time to establish "sufficient contact" to support personal knowledge of identity, *id.* at 1015 n.4 (collecting cases). Instead, after comparing the images of the disguised robbers to images of Dorsey and Bailey, the detective opined about the identities of the robbers without the benefit of such personal knowledge. He did so based only on his own belief that there were enough similarities to say the same features, even the same people, were visible in both sets of images.

These identification opinions were based on the surveillance video, still images, and the detective's extensive review of that evidence. But the jury had access to all the same evidence and, through the detective's narrative testimony, the jury had been directed to important details of that evidence they might otherwise have missed. The detective's additional identification opinions, therefore, did not "offer[] to the jury 'a perspective it could not acquire in its limited exposure' to the defendant." *Beck*, 418 F.3d at 1015 (quoting *United States v. Allen*, 787 F.2d 933, 936 (4th Cir. 1986), *vacated on other grounds*, 479 U.S. 1077 (1987)). Thus, the identity of the disguised robbers "was a determination properly left to the jury." *LaPierre*, 998 F.2d at 1465.

These restrictions on the admissibility of identification opinions reflect a basic limitation on the scope of testimony admissible as lay opinion. Rule 701 reduced courts' reliance on the slippery distinction between admissible factual testimony and inadmissible opinion testimony. *See Gadson*, 763 F.3d at 1206 ("[T]he distinction between 'fact' and 'opinion' proved to be unworkable in practice."). But the rule does not allow non-expert witnesses to offer conclusory opinions "which amount to little more than choosing up sides." *Id.* at 1208 (quoting Fed. R. Evid. 701 advisory

committee's notes). When a witness opines about an issue "within the common knowledge of the jury" based on evidence already in front of the jury, the opinion is unhelpful because the witness has "essentially 'spoon-fed his interpretations of the [evidence] to the jury.'" *Id.* at 1207–08 (quoting *Freeman*, 730 F.3d at 597); *see also United States v. Earls*, 704 F.3d 466, 472 (7th Cir. 2012) (citing *LaPierre* for the conclusion that "[o]ur sister circuits have consistently held that Rule 701 does not extend so far as to allow a witness to serve as the thirteenth juror and compare two pieces of evidence that are already available to the jury"). Here, the detective's identification opinions raised exactly these concerns: weighing evidence already in front of the jury, choosing a side, and spoon-feeding that conclusion to the jury.[2] The admission of the detective's identification opinions thus was improper under Rule 701.

### C. The district court's error was harmless.

"For errors that are not of constitutional magnitude, the government must show that the prejudice resulting from the

---

[2] We disagree with the government's assertion that vigorous cross-examination could safeguard against the issues with Detective Marsden's testimony. Cross-examination may, in some cases, address the concern that opinion testimony could "mislead juries." *Gadson*, 763 F.3d at 1206; *see also Beck*, 418 F.3d at 1015 ("[C]ross-examination exists to highlight potential weaknesses in lay opinion testimony."). But cross-examination is unlikely to be effective where, as here, the detective's identification opinions—based on the officer's assessment of evidence that the jury was equally competent to assess—borrows credibility from other testimony reflecting the detective's role as the "lead investigator" into the crimes. *See LaPierre*, 998 F.2d at 1465 ("[L]ay opinion identification by policemen or parole officers is not to be encouraged, and should be used only if no other adequate identification testimony is available to the prosecution." (quoting *Butcher*, 557 F.2d at 670)).

error was more probably harmless than not." *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) (citing *United States v. Mett,* 178 F.3d 1058, 1066 (9th Cir. 1999)); *see also* 28 U.S.C. § 2111. We conclude that the admission of the detective's improper identification testimony, "when viewed in the context of the entirety of [the detective's] testimony and other evidence offered by the [G]overnment," was harmless. *Freeman*, 498 F.3d at 905.

Here, "the evidence as a whole" provides a "fair assurance that the jury was not substantially swayed by the error." *Gadson*, 763 F.3d at 1208 (quoting *Freeman*, 498 F.3d at 905). The evidence at trial established that Dorsey drove a black Nissan Altima with a license plate ending in "435" around the time of the robberies, and a witness reported seeing a car of the same description near one of the gas stations on the night it was robbed. A video recording from another of the gas station crime scenes showed Dorsey, undisguised, paying for fuel in cash. Minutes later, the shorter, bandana-wearing robber entered, brandished the cowboy-style revolver, and robbed the cash register. Cell records also showed that Dorsey and Bailey often communicated with one another before and after, but never during, the robberies. Rental car records revealed that Bailey rented a Nissan Versa the week of the bank robbery, and a 911 caller reported that the robbers used a silver Nissan Versa as their getaway vehicle.

Even when Detective Marsden discussed the surveillance video of the robberies, most of his narrative testimony was admissible, and the video itself was properly admitted into evidence. *See United States v. Rodriguez*, 971 F.3d 1005, 1020 (9th Cir. 2020) (finding that the erroneously admitted testimony was harmless when it played a small role in the trial and most of the officers' testimony was

admissible under the Federal Rules of Evidence). The district court also mitigated the prejudice resulting from the inadmissible testimony with repeated admonitions to the jury that questions of fact—including the identity of the disguised robbers—were to be answered by the jury.

Given this overwhelming evidence, and the precautions the district court took to limit the effect of the improper identification opinions, we conclude that the Government met its burden to prove that "the error was more probably harmless than not."[3] *Freeman*, 498 F.3d at 905.

## III. Conclusion

We affirm Dorsey's conviction. The district court abused its discretion by allowing the prosecution to introduce lay identification opinions inadmissible under Rule 701. Lay identification opinions are "helpful" to the jury in "determining a fact in issue" only in limited circumstances. Fed. R. Evid. 701; *see, e.g.*, *LaPierre*, 998 F.2d at 1465 (explaining the contexts in which such testimony has been held admissible). And we have explained that Rule 701 does

---

[3] Before the trial at which Dorsey and Bailey were convicted, a previous trial had ended in a mistrial because of a deadlocked jury. Dorsey argues that we can infer the detective's improper identification opinions were crucial to his conviction because they were not presented at the first trial but were presented at the second. Even if we begin with that presumption, however, multiple aspects of the charges, trial strategy, and evidence changed from the first trial to the second. And, as we have discussed, the evidence admitted at the second trial is more than adequate to assure us "that the jury was not substantially swayed by the error." *Gadson*, 763 F.3d at 1208 (quoting *Freeman*, 498 F.3d at 905). Finally, unlike in *United States v. Marsh*, to which Dorsey directs us, the evidentiary error here was not a constitutional error, and so we need not determine that "the error was harmless beyond a reasonable doubt." 144 F.3d 1229, 1240–41 (9th Cir. 1998).

not permit witnesses to spoon-feed their interpretations of the evidence to the jury. *See Gadson*, 763 F.3d at 1208. But here, that is exactly what the detective accomplished through his improper identification opinions. His opinion testimony identifying Dorsey and Bailey was not "helpful" within the meaning of Rule 701 and should have been excluded. We affirm only because the admissible evidence at trial and the district court's instructions rendered the inadmissible testimony harmless.

**AFFIRMED.**

---

COLLINS, Circuit Judge, concurring in the judgment:

I have substantial doubt that the majority is correct in holding that the district court abused its discretion in allowing the testimony of Detective Christopher Marsden that Defendant-Appellant Dominic Dorsey challenges on appeal.  But I need not decide that issue, because, for substantially the reasons stated in section II(C) of the majority opinion, any error that may have occurred on that score was more likely than not harmless.  On that basis, I concur in the court's judgment affirming Dorsey's conviction.