**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-4330**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JUAN CARLOS SANDOVAL-RODRIGUEZ, a/k/a Picaro, a/k/a El Pastor, a/k/a Gasper,

        Defendant – Appellant.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, Senior District Judge.  (1:17–cr–00589–JKB–5)

---

Submitted:  January 17, 2025                Decided:  April 14, 2025

---

Before DIAZ, Chief Judge, and AGEE and WYNN, Circuit Judges.

---

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Chief Judge Diaz and Judge Agee joined.

---

**ON BRIEF:**  G. Alan DuBois, Federal Public Defender, Jennifer C. Leisten, Assistant Federal Public Defender, Jaclyn L. Tarlton, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Erek L. Barron, United States Attorney, David C. Bornstein, Assistant United States Attorney, Chief, Appellate Division, Kenneth S. Clark, Assistant United States Attorney, Anatoly Smolkin, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Juan Carlos Sandoval Rodriguez[1] appeals his convictions for murder in aid of racketeering and conspiracy to commit murder in aid of racketeering relating to his involvement in the MS-13 killing of Jose Portillo on March 11, 2016. On appeal, Sandoval Rodriguez raises three grounds for reversal.[2] None succeed.

I.

Sandoval Rodriguez primarily objects to the admission of a cell-phone video purporting to show surveillance footage from a security camera. The circumstances surrounding the creation of the video bear explanation. Portillo's sister had seen him the day of the murder but became worried when he did not return her phone calls the next day. She began to search for clues in places he would frequent, including a laundromat near the park where the murder occurred. She showed a photo of her brother to the laundromat attendant, who let her review the facility's security-camera footage. She located footage appearing to show her brother and used her phone to make a recording of it. The video shows two men, who the Government alleges are Sandoval Rodriguez and Portillo, and the video's timestamp indicates that it was taken after 11 P.M. on the night of the murder. Portillo's sister shared this video with a police detective. The laundromat's security system

---

[1] There is inconsistency throughout the record over whether Mr. Sandoval Rodriguez's compound surname is hyphenated. We defer to the usage reflected in his briefing.

[2] Sandoval Rodriguez's other convictions, including other murders in aid of racketeering, assault with a dangerous weapon in aid of racketeering, and extortion, are the subjects of a different appeal. *See United States v. Sandoval Rodriguez*, No. 22-4324 (4th Cir. argued Jan. 30, 2025).

3

stores footage for only two weeks, which probably explains why the trial exhibit consists of a video of a video and not the security footage itself.

At trial, the Government told the jury that this footage was critical. In its opening statement, the Government emphasized that "[j]ust minutes before the murder, you will see the defendant . . . walking towards the entrance of the park on the night of [the] murder." J.A. 219.[3] Sandoval Rodriguez, on the other hand, told the jury that the footage "is far from clear." J.A. 224. On appeal, Sandoval Rodriguez claims that the video was insufficiently authenticated.

"To establish that evidence is authentic, a proponent need only present 'evidence sufficient to support a finding that the matter in question is what the proponent claims.'" *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) (quoting Fed. R. Evid. 901(a)). "The district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Id.* (first citing *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992); and then citing *United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006)). Thus, "[t]he burden to authenticate under Rule 901 is not high—only a *prima facie* showing is required." *Id.* Sandoval Rodriguez did not challenge the foundation for the video at trial, so we review for plain error.

At trial, the laundromat attendant testified that the camera system was installed to detect theft. The surveillance video "note[s] the date and time that the recording is

---

[3] Citations to the "J.A." and "S.J.A." refer, respectively, to the Joint Appendix and Sealed Joint Appendix filed by the parties in this appeal.

occurring." J.A. 286. She testified that she has used the system to look for a video from a specific day at a specific time. Furthermore, the system "record[s] both the date and the time," and does so "[o]n the top of the video." J.A. 286–87.

Portillo's sister testified that she "saw the videos from the [day before the murder] . . . until 11:00 o'clock the night of the 11th." J.A. 311. She stated that she could tell that it was her brother in the video "[b]ecause he was dressed in the same clothes, and I recognized my brother, the way he walks and all." J.A. 311. She later reasserted that she "recognize[d] that it's him." J.A. 312. She "used [her] phone to record" a video of the security system's display screen. J.A. 311. Next, she "saved it on [her] phone[,] and [she] shared it with the detective." J.A. 313.

Later in the trial,[4] David Diaz-Alvarado, a cooperating witness, testified. On the stand, he admitted to being involved with MS-13 and joining the group that went to the park to kill Portillo. Yet he claimed that his participation in the murder was limited to standing lookout and helping to move the body into a shallow grave. When shown the laundromat footage, he stated that he recognized Sandoval Rodriguez in the video because he was wearing a brown sweater which he "recall[ed] the defendant was wearing on the

---

[4] Even though Diaz-Alvarado testified more than a week after the video was admitted, the Advisory Committee's Note to Rule 901(a) makes clear that the "requirement of showing authenticity or identity falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b)." And under Federal Rule of Evidence 104(b), a court may "admit the proposed evidence on the condition that the proof be introduced later." Thus, his testimony is capable of helping to authenticate the evidence. *See, e.g.*, *United States v. Blackwell*, 694 F.2d 1325, 1331 (D.C. Cir. 1982) ("[E]ven if the photographs were not fully authenticated by the prosecution and their admission into evidence premature, any error was cured by the testimony of the defendant before the close of the trial.").

5

day Jose Portillo was killed." J.A. 939. The next day, he confirmed his testimony, again stating that "it's the same sweater he had on the day the murder was committed." J.A. 1062.

Based on the aforementioned testimony, a jury could believe that the security system was used in the ordinary course of business, that an employee had relied on the saved date and time data in the past to locate relevant footage, that the identities of the men in the footage are Sandoval Rodriguez and Portillo, and that the video shows the night of the murder. It was not plainly erroneous for the district court to find adequate foundation.

But Sandoval Rodriguez appears to downplay the testimony of Diaz-Alvarado and only acknowledges Diaz-Alvarado's identification of him in the video by saying that "his testimony had significant reliability concerns." Opening Br. at 43. Yet "so long as there is a basis for the jury to resolve the authenticity question in favor of the party offering a tape recording, arguments on the reliability of identification go to the weight of the evidence, not its admissibility." *United States v. Capers*, 61 F.3d 1100, 1106 (4th Cir. 1995). So concerns over the reliability of Diaz-Alvarado's testimony "go to the weight of the evidence, not its admissibility." *Id.*

Sandoval Rodriguez argues that it was error for the district court to accept this circumstantial evidence because the foundation for admitting a video is "generally established" through eyewitness testimony that the video accurately depicts the scene in question or that it was generated through a reliable process. Opening Br. at 24 (citing *United States v. Patterson*, 277 F.3d 709, 713 (4th Cir. 2002)). Yet the case Sandoval Rodriguez cites for this proposition only states that the necessary foundation "is most commonly established through" those two means. *Patterson*, 277 F.3d at 713. Indeed, that

6

very case next proceeds to rely on circumstantial evidence to find that the district court properly admitted the photograph. *Id.* Sandoval Rodriguez's argument would require video evidence be authenticated through either personal knowledge (Rule 901(b)(1)) or evidence of a reliable process (Rule 901(b)(9)). But Rule 901 also permits authentication based on "[t]he appearance, contents, substance, . . . or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). And Rule 901(b) emphasizes that the ten enumerated examples it provides are "not a complete list."

Finally, Sandoval Rodriguez gestures toward, but does not develop, an argument that because the footage is really a video within a video there is another source of potential error, such that a heightened showing of authentication is required. To the extent such an argument has not been forfeited, we determine that it would not have been plainly erroneous for the district court to find that the testimony of Portillo's sister was sufficient to describe the "process" of creating the phone recording of the surveillance footage and to "show[] that it produce[d] an accurate result" of replicating that footage. Fed. R. Evid. 901(b)(9).

## II.

Next, Sandoval Rodriguez argues that the district court allowed the jury to hear impermissible lay opinion testimony from Detective Myers, the lead detective in the investigation into Jose Portillo's death. As part of this investigation, he reviewed Portillo's Facebook account. A subpoena yielded records that Portillo had been in contact through Facebook phone calls and messages with an individual operating another Facebook account under the name "Gasper Rodriguez." The Gasper Rodriguez account had been deactivated

7

three days after the murder, so Myers obtained a search warrant for it. He reviewed all of the photographs posted by the account and determined that the person in each photograph was Sandoval Rodriguez, which strongly suggested that Sandoval Rodriguez was the owner of the account.

Before the prosecutors played the laundromat footage at trial, Sandoval Rodriguez objected, stating: "I am concerned that the witness is going to offer an opinion about the pants from the video matching the pants from some of the Facebook photographs, and I don't think he's qualified to do that. . . . It's going to be taken by the jury with greater weight, I would think, because it's coming from the homicide detective. The jury can judge for themselves. Unless the government has some scientific basis to make that comparison, I don't think it's appropriate." J.A. 347–48. The district court overruled this objection.

The government proceeded to ask Myers whether, during his investigation, he had compared three of the Facebook photos to the laundromat footage. Myers answered in the affirmative and stated that for two of the photographs, the pants and the shoes were the same as those in the video. For the third photograph, Myers testified that the pants were the same as in the video, but the shoes were different.

Sandoval Rodriguez is correct that such testimony is improper lay witness opinion testimony as it was simply not helpful to the jury. Federal Rule of Evidence 701 permits witness testimony in the form of an opinion so long as it is: (1) "rationally based on the witness's perception;" (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue; and" (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." A jury is more than capable of comparing

8

clothing seen in photographs with those seen in videos. *See, e.g.*, *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993) ("Lay opinion testimony of the type given by [the police-officer witness] is of dubious value. The jury, after all, was able to view the surveillance photos of [the defendant] and make an independent determination whether it believed that the individual pictured in the photos was in fact [the defendant].").

The Government's arguments to the contrary lack merit. The Government states that Myers was familiar with the parties in the case. But this is not a case where the witness had substantial and sustained contact with the defendant or where the defendant's appearance had changed before trial. *E.g.*, *United States v. Dorsey*, 122 F.4th 850, 856–57 (9th Cir. 2024) (finding impermissible lay testimony from a detective who "identified [a defendant] based on surveillance videos and still photos, evidence already in front of the jury"). In fact, the entire basis of Myers's knowledge—the Facebook photographs—was available to the jury.

The Government argues that to make a credibility "determination about the detective investigating the crime at issue, the jury had to understand the particular investigative steps taken and why they were taken," especially how "Detective Myers identified the defendant as one of the individuals involved in the crime." Response Br. at 35. Tellingly, the Government cites no case law for this proposition. To be sure, this Court appreciates the need for parties to be able to tell a comprehensible story to the jury. And to facilitate parties' ability to do so, this Court recognizes "narrative integrity" as a factor to consider while assessing a challenge under Rule 403, *United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023) (quoting *Old Chief v. United States*, 519 U.S. 172, 183 (1997)), and in

9

the past has recognized that parts of the *res gestae* may be heard if the jury needs evidence of other crimes to understand the "full presentation" of the offense, *United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980) (quoting *United States v. Weems*, 398 F.2d 274, 275 (4th Cir. 1968)). The Rule of Completeness also permits a jury to hear the fuller story if fairness so requires. Fed. R. Evid. 106. But this Court has never created a general exception to the prohibition against lay-opinion testimony for occasions when the government seeks to bolster the unchallenged credibility of one of its witnesses.

The error, however, was harmless. "[I]n order to find a district court's error harmless, we need only be able to say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (quoting *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997)).

The erroneous testimony took up just half a page of the transcript. Its import to the Government's case was trivial. And there was ample other evidence on which the jury may have relied to convict. For instance, there was the laundromat footage purportedly showing Sandoval Rodriguez and Portillo together on the night of the murder; the Facebook messages between Sandoval Rodriguez and Portillo up to and including the night of the murder; the testimony of Diaz-Alvarado, the cooperating witness; the cell-tower data showing that Portillo and Diaz-Alvarado were near the park on the night of the murder;

10

and a letter recovered from Sandoval Rodriguez's prison cell where he admits to MS-13 membership and his involvement in a murder.[5]

Sandoval Rodriguez is correct that the unfair prejudice created by the testimony was heightened because the witness bore "the imprimatur of law enforcement." Opening Br. at 40 (quoting *United States v. Walker*, 32 F.4th 377, 392 (4th Cir. 2022)). But such prejudice was ameliorated by a jury instruction that "[t]he fact that a witness may be employed by the federal government or a state or local government as a law enforcement official does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness." J.A. 1714.

Thus, the comparison testimony did not substantially sway the jury, and the error was harmless.

### III.

Finally, Sandoval Rodriguez contends that the trial court erred by declining to instruct on prior non-identification and by refusing to define reasonable doubt. He requested both instructions at trial and in written motions. Both were denied.

We review a district court's refusal to provide a proffered jury instruction for abuse of discretion. *United States v. Gutierrez*, 963 F.3d 320, 338 (4th Cir. 2020). Reversible

---

[5] A portion of the letter reads: "They arrested me because of your f---ing mouth. Today we send you the unknown. Did you think this was just going to be left like that? You made a mistake, and now you're going to burn in h---. We don't make empty threats, we follow through. *We buried that f---ing chavala*, and now we're on our way . . . . We'll blast them." J.A. 1228 (emphasis added). Chavala is a curse word used to describe a rival gang member. Diaz-Alvarado testified that on the night of the murder the group set out to "do something" about "another chavala[]." J.A. 892.

error occurs only when the proffered "instruction (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Ravenell*, 66 F.4th 472, 481 (4th Cir. 2023) (quoting *United States v. Hassan*, 742 F.3d 104, 129 (4th Cir. 2014)).

Sandoval Rodriguez believes that the prior non-identification is significant as it would undermine the credibility of Diaz-Alvarado, a critical governmental witness. Diaz-Alvarado did not identify Sandoval Rodriguez as being involved in the murder when Diaz-Alvarado was first interviewed by law enforcement, even though Sandoval Rodriguez's picture was visible to him for about forty minutes during that interview. Nor did Diaz-Alvarado initially identify Sandoval Rodriguez in the laundromat video. Sandoval Rodriguez raises two cases from other circuits that concluded that a prior non-identification instruction was proper. *See United States v. Brewer*, 36 F.3d 266 (2d Cir. 1994); *United States v. Brink*, 39 F.3d 419 (3d Cir. 1994).

His argument fails for two independent reasons. First, the instruction was "substantially covered by the court's charge to the jury." *Ravenell*, 66 F.4th at 481. Indeed, the jury was instructed to consider whether "the witness [was] consistent in his" testimony and further told that "[i]nconsistencies or discrepancies in the testimony of a witness . . . may or may not cause you to discredit such testimony." J.A. 1713–14. The court also

12

provided a special instruction related to accomplice testimony, emphasizing "that it must be scrutinized with great care and viewed with particular caution." J.A. 1718.

Second, failure to provide this instruction did not "seriously impair[]" the defense as Sandoval Rodriguez thoroughly impeached Diaz-Alvarado on this prior non-identification. Sandoval Rodriguez established that Diaz-Alvarado identified other MS-13 members from police photographs. He made Diaz-Alvarado answer at least four times that he did not remember seeing the photograph of Sandoval Rodriguez. Diaz-Alvarado also admitted that during the interview with police he was withholding "the full truth" to make himself look better. J.A. 1127. Soon thereafter, he admitted to "lying to the police." J.A. 1130. Later, the jury saw a video of Diaz-Alvarado's interview where it was clear that the photograph of Sandoval Rodriguez was in front of him for about forty minutes and he did not identify him. The jury needed no instruction to doubt his credibility.

As to the reasonable-doubt instruction, Sandoval Rodriguez properly concedes that this Court's "longstanding rule" forecloses his argument but nevertheless preserves the issue for possible further appeal. Opening Br. at 47 (quoting *United States v. Frazer*, 98 F.4th 102, 115 (4th Cir. 2024)). This Court has determined that "although the district court may define reasonable doubt to a jury . . . the district court is *not required to do so*." *Frazer*, 98 F.4th at 115 (quoting *United States v. Walton*, 207 F.3d 694, 696–97 (4th Cir. 2000) (en

13

banc)). Thus, the district court did not abuse its discretion by declining to provide either instruction.

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*